James GLEASON, Plaintiff,

v.

**CHAIN SERVICE RESTAURANT,** Luncheonette & Soda Fountain Employees Union, Local 11 of the Hotel & Restaurant Employees and Bartenders International Union, AFL–CIO, Fred Ferrara and George Papalexis, Defendants.

No. 68 Civ. 4795.

United States District Court
S. D. New York.

April 24, 1969.

Milton Horowitz, New York City, for plaintiff; Burton Hall, New York City, of counsel.

Luxemburg & Yudenfriend, for defendants; Harold L. Luxemburg, New York City, of counsel.

OPINION

HERLANDS, District Judge:

This case illustrates the recurring problem of accommodating two conflicting policies: the policy that the courts should avoid interfering with the internal affairs of labor unions and the policy that the courts should protect certain fundamental rights of individual labor union members which the Congress has denominated collectively as the "Bill of Rights of Members of Labor Organizations". Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") § 101, 29 U.S.C. § 411 (1964).

I.

The issue is brought before the Court by plaintiff's application for a preliminary injunction (heard on January 9, 1969) whereby he seeks restoration *pendente lite* of his membership rights in Local 11, the defendant-union, under LMRDA §§ 101 and 102, 29 U.S.C. §§ 411 and 412 (1964).

In view of the Court's disposition of the motion, it is not necessary to hold a hearing under Fed.R.Civ.P. 65 as requested by plaintiff.

*What The Complaint Charges*

In his complaint (filed December 3, 1968), plaintiff alleges that for approximately sixteen years until December 6, 1967 he was a member in good standing in the union and in the International Union with which it is affiliated. On December 6, 1967, plaintiff was expelled by the union from membership.

Instead of pleading a short and plain statement of his claim, plaintiff sets forth a prolix recital of many facts assertedly evidencing a conspiracy between defendants Ferrara (president of the union) and Papalexis (a business agent of the union) and others, to deprive plaintiff of his freedom of speech as a union member, and ultimately to expel him from the union.

The following facts do not constitute findings but are merely set out by way of background to further an understanding of the complaint and of the relief sought.

Plaintiff alleges that in 1967, the Insurance Department of the State of New York conducted an inquiry into what were apparently unexplained depletions of the union welfare fund, and that late in 1966 and early in 1967, certain officers of the union conspired to bribe an official of the New York State Insurance Department. Because plaintiff, also a union officer, was not a party to this conspiracy but had knowledge of it, the individually named defendants repeatedly attempted to intimidate and silence the plaintiff and to destroy his influence and political support within the union.

Plaintiff asserts that, starting in 1966 and until August 1967, defendant Ferrara shifted plaintiff's activities as business agent away from shops where plaintiff enjoyed political support.

Plaintiff alleges that, on April 6, 1967, after attending a private meeting with defendants Ferrara and Papalexis, plaintiff was pistol whipped and blackjacked by three men under their control. Two weeks thereafter, plaintiff was advised by a "spokesman" for the individual defendants that he ought to resign his union office, but he refused.

In August 1967, Ferrara relieved plaintiff of all of his duties as business agent and assigned him to clerical work. Along with this latter action, it is alleged that defendant Ferrara circulated leaflets announcing that plaintiff had been relieved of his responsibilities because of complaints then under investigation.

On August 31, 1967, defendant Papalexis filed with the union written charges against plaintiff. (See Appendix A annexed to this opinion).

On the same day, Arthur Russell, secretary-treasurer of the union mailed copies of the charges to plaintiff and informed him that a trial committee would

give him ample notice of the date of the trial.[1]

On September 29, 1967, plaintiff requested specifications of the charges filed against him.

On October 4th, specifications were furnished; and the hearing was set down for October 16, 1967. (Complaint, Exh. A). (Appendix B annexed to this opinion sets out the specifications).

Finding the specifications inadequate for preparation of any defense, plaintiff demanded a bill of particulars, but his request was denied.

On October 16th, a hearing was conducted by a trial committee composed of five union members. Plaintiff was given an opportunity to cross-examine those witnesses who testified before the committee, and was afforded the opportunity to call his own witnesses. No transcript of the proceedings is before the Court on this motion.[2]

Plaintiff alleges several irregularities in the hearing:

a. The trial committee inquired into the authorship and distribution among members of defendant union of certain leaflets which contained accusations against the union leadership; testimony was given that a political ally of plaintiff was seen possessing a report of the McClellan Committee which had conducted an inquiry into the union welfare fund; a union member testified that he had heard plaintiff make political demands on President Ferrara for higher union office. Plaintiff claims that this testimony had no relevance to the charges filed against plaintiff and reflected the true motivation of his triers.

b. Plaintiff was denied an opportunity to cross-examine some witnesses who apparently submitted letters, affidavits and/or oral complaints against plaintiff, but who were not present at the hearing before the trial committee.

The trial committee found plaintiff guilty of the first eight charges, and of four out of the seven infractions specified under the ninth charge. It recommended expulsion of plaintiff from the union, and that he be barred forever from holding any union office.

On October 19, 1967, the Executive Board of the union adopted the report of the trial committee and voted unanimously to expel plaintiff from union membership.[3]

1. These facts are not set forth in the complaint but are contained in defendant Ferrara's papers submitted in opposition to the motion. Ferrara Affidavit in Opposition to the Motion, Exh. a.

2. Apparently, no official transcript of the trial committee's proceedings was made. According to plaintiff's motion papers, he himself recorded the proceedings on tape. Plaintiff has attached a written transcript of the recording to his reply affidavit submitted in support of his motion. Because the Court has concluded that the charges and specifications filed against plaintiff were inadequate, the Court does not reach the question of whether there was sufficient evidence to uphold the trial committee's findings; and, hence, there is no need to review any transcript of the disciplinary proceedings. The question of the admissibility of plaintiff's tape recording is appropriately left for consideration at the plenary trial. Cf. United States v. McKeever, 169 F.Supp. 426 (S.D.N.Y. 1958) (as to the criteria governing the admissibility of tape recordings), rev'd on other grounds, 271 F.2d 669 (2d Cir. 1959).

3. At this juncture, the Court departs from a recitation of the allegations of the complaint to consider the minutes of the Executive Board meeting, which were submitted by defendant Ferrara in support of his opposition to the motion.

The minutes summarize, in the form of seven divisions, the *findings* of the trial committee. The Court quotes the first division:

"A. It was testified that Gleason formed a group whose object it was to 'take over Local 11'. Present at Gleason meetings were strong arm men, non-members of the union, who were promised a share in Gleason's administration. Gleason had told the union that unless he was made Secretary-Treasurer immediately, he would make trouble for Local 11."

Minutes of the Executive Board, page 6, Ferrara Affidavit, Exh. F.

Plaintiff alleges that the union published and circulated a false and fraudulent handbill among members of the union entitled "Report of Gleason Trial" and "Statement On 'Mystery' Leaflet", with the intent of procuring the necessary membership ratification of his expulsion.

The handbill (Exh. B annexed to the Complaint) restates the findings of the trial committee as they were summarized in the minutes of the Executive Board meeting; mentions the fact that Gleason had charged various union officials with misappropriation of union funds and that he was intent on making "trouble" for Local 11; charges Gleason with operating a "kick-back racket" among the employees he represented as business agent[4]; and charges Gleason with advocating affiliation with another union.

On December 5, 1967, at a meeting of the general membership of Local 11, the membership voted to approve the report of the trial committee and the minutes of the Executive Board meeting of October 19, 1967, both of which had been read to the membership.

Plaintiff was given an opportunity to speak at the membership meeting.

By letter of December 6, 1967, plaintiff received official notice of his expulsion from defendant union. (Exh. C annexed to the Complaint).

Thereafter, plaintiff initiated an unsuccessful course of internal appeal,— first, to the New York City Joint Board

---

Elsewhere in the minutes are summaries of the trial committee's findings, including findings with respect to those charges of which Gleason was exonerated for lack of evidence. (Minutes of the Executive Board, pp. 7–9, Ferrara Affidavit, Exh. F).

The minutes also record the following description of the Executive Board meeting:

"The entire Executive Board participated in numerous questions and discussions on the Trial Committee report. Brother Mac Meyers described secret meetings that he had attended with Gleason, where mobsters and gangsters told of how they intended to take over the union with Gleason's help."

Minutes of the Executive Board, page 10, Ferrara Affidavit, Exh. F.

The Executive Board voted unanimously to approve the findings of the trial committee and to expel plaintiff from Local 11. The minutes state:

"The Executive Board instructed the officers to take any and all steps necessary to publicize the full Gleason trial data, to mobilize the entire union behind the decision of the Trial Committee and to make available for all Shop Stewards and members the 49 different exhibits that constitute the evidence against Gleason."

Minutes of the Executive Board, page 10, Ferrara Affidavit, Exh. F.

The findings as set forth in the minutes are not accurate reflections of the findings in the Report of the Trial Committee (which was submitted by defendants). Plaintiff alleges in his complaint that the trial committee questioned him about his political activity in the union and confronted him with several witnesses regarding such activity. The findings of the trial committee, however, omit all references to this phase of the trial as it was unrelated to any of the specified charges. (Plaintiff asserts that this omission was deliberate because discipline on these grounds would be unlawful). The Minutes of the Executive Board meeting of October 19, 1967, however, failed to take such precautionary measures.

Whether, in fact, this reference to political activity evidences improper motivation, the Court need not decide on this motion. The Court observes, however, that the summary quoted above from the minutes incorrectly characterizes what may have been *evidence* before the trial committee as *findings*.

There are other serious inaccuracies in the Minutes of the Executive Board meeting of October 19, 1967 with respect to the findings contained in the Report of the Trial Committee. The significance of the foregoing circumstances need not be further explored because the Court decides this motion on other grounds.

4. After stating that "[p]erhaps even a more alarming and even more criminal side of Gleason's activities did not officially come before the Trial Committee", the handbill details the alleged "kick-back scheme".

of the International Union on December 19, 1967, and finally, on February 19, 1968, to the General President of the International Union.

Plaintiff alleges that the Insurance Department of the State of New York has found a wrongful depletion in the union welfare fund in the sum of approximately $138,000; and has found defendant Papalexis and others responsible for portions of this depletion. Plaintiff further alleges that indictments have been returned against other Local 11 union officials for perjury in connection with the conspiracy to bribe an official of the Insurance Department.

*Relief Sought*

Plaintiff seeks the following relief:

1. A declaration that the expulsion proceedings are null and void;

2. Reinstatement in the union and restoration of his full membership rights;

3. An injunction restraining and enjoining the union, its officers, agents, servants and employees, including defendants Ferrara and Papalexis, and all other persons in active concert or participation with any of them, from attempting to carry out the punishment imposed on plaintiff;

4. An injunction restraining defendants from interfering with or preventing the plaintiff's free exercise of his rights and privileges (within defendant union, its sister local unions, intermediate bodies and the International Union with which it is affiliated) to nominate candidates, to be nominated as a candidate for union office for which he is otherwise eligible, to vote in elections and referenda and to attend membership meetings;

5. Compensatory damages in the sum of $220,000;

6. Punitive damages in the sum of $50,000;

7. Reasonable counsel fees, costs and disbursements; and

8. Such other, further, and different relief as to this Court may seem appropriate.

*Plaintiff's Legal Contentions*

Plaintiff claims that his expulsion violated certain rights guaranteed to every union member: the rights to express any views, arguments and opinions and to meet and assemble freely with other members, granted by § 101(a) (2) of the LMRDA, 29 U.S.C. § 411(a) (2); and the right to appear as a witness in any judicial or administrative proceeding assured by § 101(a) (4) of the LMRDA, 29 U.S.C. § 411(a) (4).

Section 102 of the LMRDA, 29 U.S.C. § 412, authorizes any person whose rights secured by the provisions in § 101 have been infringed to bring a civil action in a United States District Court "for such relief (including injunctions) as may be appropriate".

It is also plaintiff's position that the exercise of the above rights is protected against union discipline by the following provision in § 609 of the LMRDA, 29 U.S.C. § 529:

"§ 529. Prohibition on certain discipline by labor organization

It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section."

A cognate provision is Section 101(a) (5) of the LMRDA, 29 U.S.C. § 411(a) (5), which reads:

"(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

Plaintiff argues that, because the specifications served upon him were inadequate, he was denied an opportunity effectively to prepare a defense to the charges; that he was denied a full and fair hearing for the reason that he was not allowed to confront all the witnesses whose testimony was considered by the trial committee; and that the decision of the trial committee cannot stand in face of the lack of supporting evidence in the record. Although not explicitly posited in these terms, plaintiff's complaint, upon analysis, may also be taken to assert that plaintiff was denied a full and fair hearing as a result of two factors: (1) the erroneous and misleading presentation of the trial committee's findings to the Executive Board whose approval was required to effectuate the recommended expulsion; and (2) the similarly distorted presentation of the trial committee's findings to the general membership, which presentation was accomplished both by way of distribution of the allegedly fraudulent handbill and by a reading to the general membership of the misleading minutes of the Executive Board meeting.

Plaintiff also contends that § 101(a) (5) not only prescribes procedural due process but also implicitly outlaws improperly motivated disciplinary proceedings notwithstanding the appearance of procedural propriety.

Sharply disputing plaintiff's charges, defendants claim full compliance with the provisions of § 101(a) (5), and with the Constitution and By-laws of the union.[5]

The allegations in the complaint and the legal consequences which plaintiff urges flow therefrom raise important and complex questions under the LMRDA.[6]

On the present record, however, the Court is of the view that this motion for interlocutory relief can be disposed of on narrow grounds which do not require a Rule 65 hearing, as requested by plaintiff, nor a discussion of plaintiff's various theories of recovery.

---

5. Inasmuch as the Court makes no findings with respect to the majority of the allegations in the complaint, it is unnecessary to explicate defendants' position more fully.

In his opposing affidavit, defendant Ferrara states: "Your deponent will not dignify the wild accusations made by Gleason in his complaint and affidavit by replying to them." Ferrara Affidavit, page 5. Ferrara alleges conclusorily that procedural due process guaranteed to plaintiff by § 101(a) (5) was granted. Defendant Papalexis denies the existence of any conspiracy to deprive plaintiff of his right of free speech within the union. He asserts that plaintiff was not active in internal union politics until he became aware of the fact that disciplinary proceedings against him were imminent. Papalexis also urges plaintiff's laches as a separate ground for denying interlocutory and permanent relief.

6. Enforcement of the "Bill of Rights" provisions of the LMRDA h'as, in the past, involved such typical fact situations as where a union member sought review of trial committee findings as unfounded in the evidence; or where a union member demanded reinstatement after having been expelled pursuant to a union by-law which made libeling of union officials a subject of discipline. This case is more complex. The ultimate trial herein may present a legal question of first impression: whether, despite the holding of a procedurally full and fair hearing, it is proper to inquire into defendants' actual motivation for disciplining plaintiff. Whether this is a material subject for judicial scrutiny under § 101(a) (5) has never been litigated nor has the question been litigated under § 609, i. e., assuming compliance by the union officers with the procedural due process requirements of § 101(a) (5), does the ousted union member have a claim that the improper motives of the union officers in expelling him rendered their act an attempt to interfere with the exercise of the member's right of free speech under § 101(a) (2) and, therefore, violated § 609.

Another apparently novel issue is raised by plaintiff's claim that the fact that a distorted version of the trial comitee's findings and extraneous factors were placed before the Executive Board and the general membership, denied plaintiff a "full and fair hearing" under § 101(a) (5).

The findings of fact and conclusions of law which constitute the grounds of the Court's action are set forth in this opinion, as required by Fed.R.Civ.P. 52 (a).

*Findings of Fact*

1. Plaintiff was a member of defendant union in August 1967.

2. At all relevant times, defendant union was and still is a labor organization, to wit, a local union within the meaning of the LMRDA; defendant Ferrara was and still is a member and president of defendant union; defendant Papalexis was and still is a member and business agent of defendant union.

3. Charges were preferred by defendant Papalexis against plaintiff on August 31, 1967.

4. On August 31, 1967, plaintiff was sent a copy of the charges.

5. On September 22, 1967, plaintiff was given notice by the secretary-treasurer of defendant union that a trial committee would convene on October 3, 1967.

6. On September 29, 1967, plaintiff requested specifications of the charges.

7. On October 4, 1967, plaintiff was sent specifications of the charges by the secretary-treasurer of defendant union. (The charges and specifications are annexed to this opinion as Appendices A and B). The original hearing date was adjourned to October 16, 1967.[7]

8. The hearing took place; and the trial committee found defendant guilty of the first eight charges, and of four out of the seven infractions specified under the ninth charge.

9. Having found plaintiff guilty of the aforementioned charges, the trial committee recommended that plaintiff be expelled as a member of defendant union; that his office be declared vacant; and that he be forever barred from holding any office whatsoever, elected or appointed, in Local 11.

10. On October 19, 1967, the Executive Board of the union unanimously adopted the report of the trial committee and recommended plaintiff's expulsion.

11. On December 5, 1967, the general membership of Local 11, acting with a quorum, voted to affirm the report of the trial committee and the minutes of the Executive Board Meeting of October 19, 1967.

12. On December 6, 1967, plaintiff received official notice of his expulsion from defendant union.

13. Plaintiff's internal union appeals were unsuccessful.

*Legal Discussion*

This Court has jurisdiction of this action under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq., and particularly sections 412 and 529 thereof.

Plaintiff duly sought and exhausted all those internal remedies required to be exhausted by him before seeking redress in this Court.

The Court confines itself to a discussion of the adequacy of the specifications. However, at a trial on the merits, plaintiff is not precluded from raising any or all of his other legal contentions.

Although the courts traditionally have been wary of interfering with matters concerning internal union discipline, the fundamental premise of the LMRDA is that labor organizations should function democratically; and the courts are vested with jurisdiction to insure enforcement of certain minimum democratic rights. Note, Rights of Union Members: The Developing Law under the LMRDA, 48 Va.L.Rev. 78 (1962). A court must, therefore, overcome its reluctance when it appears that union dis-

---

7. The complaint (paragraph 25) alleges that plaintiff demanded further particularization of the charges and that this request was denied. The opposing affidavits do not answer this assertion. The statute places the burden of providing a union member with written specifications upon the defendant-union. There is no requirement that a union member must demand a bill of particulars in order to enjoy the protection of the statute.

ciplinary measures lack the basic fairness and due process guaranteed by § 101(a)(5), 29 U.S.C. § 411(a)(5). *See, e. g.*, Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO, 338 F.2d 309 (5 Cir. 1964).

■ Section 101(a)(5) provides that, before expulsion for any reason other than non-payment of dues, a union member must be served with "written specific charges". The objective of this provision is to afford a union member sufficient notice of the accusations made against him so that he can prepare a defense.

■ The strict requirements of a criminal prosecution are not to be read into § 101(a)(5), Null v. Carpenters Dist. Council of Houston, 239 F.Supp. 809 (S.D.Tex.1965). Union officials cannot be expected "to frame their charges and specifications technically as formal legal pleadings", Jacques v. Local 1418, Int'l Longshoremen's Ass'n, 246 F.Supp. 857, 859 (E.D.La.1965), aff'd, 404 F.2d 703 (5th Cir. 1969).

■ However, "fundamental notions of due process" (which § 101(a)(5) was enacted to protect) require that the charges and specifications "be so drafted as to inform a member with reasonable particularity of the details of the charges". Jacques v. Local 1418, *supra* at 859–860; *accord,* Magelssen v. Local

518, Operative Plasterers' & Cement Masons' Int'l Ass'n, 233 F.Supp. 459 (W.D.Mo.1964); Addison v. Grand Lodge of the Int'l Ass'n of Machinists, 300 F.2d 863 (9th Cir. 1962) (where one of the grounds alleged as constituting denial of a full and fair hearing was the union's refusal to provide "a bill of particulars of the vague charges"); Vars v. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, 215 F.Supp. 943 (D.Conn.1963), aff'd, 320 F.2d 576 (2d Cir. 1963) (the district court found that the charges were "not so vague" as to be prejudicial because the union member admittedly was "very familiar" with the facts underlying the charges and was "dilatory" in his request for "a bill of particulars"); *see generally,* J. Etelson and F. Smith, Union Discipline under the Landrum-Griffin Act, 82 Harv.L.Rev. 727, 741–43 (1968).

■■ The requisite degree of specificity required to meet the statutory standards will, of necessity, vary from case to case. The circumstances surrounding an alleged disciplinary infraction by a union member, and the time and place as nearly as can be ascertained, constitute the minimal information that the union should disclose to the accused in order to afford him a reasonable opportunity to prepare his defense. *See,* Jacques v. Local 1418, *supra;*[8] *see also,* J. Etelson and F. Smith,

---

8. H.R. 4473 as referred, a draft of § 101(a)(5), reads as follows:

"Safeguards Against Improper Disciplinary Action—(b) served with written charges which shall include the time, place, specific nature of, and acts comprising the alleged offense, and citation of the constitutional provision or other rule of law alleged to have been violated."

The Legislative History of the Labor Management Reporting and Disclosure Act of 1959, Vol. I, at 177. The deletion of these specifies in the final bill is not to be interpreted as reflecting an intention on the part of Congress to eliminate the requirement that charges should state their factual basis. The deletion

represented an attempt to avoid imposing technical formalities on union disciplinary procedures, which are conducted ordinarily by laymen. This draft also itemized the formal requirements of a full and fair hearing, such as, the right to conduct cross-examination. The itemization was deleted in the final draft. However, it is clear that cross-examination is still an integral part of "full and fair hearing" in § 101(a)(5); and the courts have so held. *See, e. g.,* Allen v. Int'l Alliance of Theatrical, Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO, 338 F.2d 309 (5 Cir. 1964); Anderson v. United Brotherhood of Carpenters and Joiners of America,

Union Discipline under the Landrum-Griffin Act, *supra*, at 742.

■ Moreover, where a fellow union member is connected with the alleged violation and the accused could not in fact readily discover or substantially recall the material events surrounding the alleged infraction without first having been furnished the name of this union member, elemental notions of fairness require the specifications to disclose that name, *cf.* Null v. Carpenters Dist. Council of Houston, *supra,* (where the following factual details were held to be specific especially because the accused had been informed orally of the other member's identity: the accused permitted the other member to do * *; this occurred at a [named] hotel from September, 1961 until February, 1962).

In light of the foregoing, an analysis of the nine charges and specifications demonstrates that the majority fail to meet the statutory standard and are, therefore, fatally inadequate.

┃ ■ Charge No. 1 accuses plaintiff of collecting moneys "from members of the union" for the payment of initiation fees and/or dues and failing to turn such funds into the union treasury. The specifications of this charge add the following information: that these events "took place during 1965, 1966 and 1967"; that these events related "to employees of the Walgreen company who are required to join" the union under the terms of the collective bargaining agreement; that on "at least two occasions" plaintiff collected "$30 from employees for their initiation fee, gave no receipts and the money was never turned in"; that on "one of these occasions during 1966" the plaintiff stated that "the money was returned to the woman through another employee and not turned in to the Union for initiation fees"; and that on "several occasions" plaintiff "collected $10 for dues, gave no receipts and·the money was never turned in."

Charge No. 2 accuses the plaintiff of collecting moneys "from members of the union for the payment of initiation fees and dues and not giving proper receipts therefor." Charge No. 2 reads the same as Charge No. 1 except that the gravamen of the second charge is "not giving proper receipts therefor." The specifications of the second charge read: "This charge relates to the instances set forth above as well as to other employees of the Walgreen Company during 1965, 1966 and 1967."

Charge No. 3 accuses the plaintiff of collecting money "from a member of the union for the payment of initiation fee and without authorization, returning the money to the member." This charge differs from the first two charges in that it is limited to one member of the union and the return of the collected money to the member "without authorization". The specifications of Charge No. 3 read: "This relates to the facts set forth under Charge No. 1 above."

47 CCH Lab.Cas. ¶ 18,400 (D.C.Minn. 1963); J. Etelson and F. Smith, Union Discipline Under The Landrum-Griffin Act, *supra*, at 746. Factual assertions, however informal, must possess specificity sufficient to enable the accused to prepare his defense and should, where reasonably appropriate, include such particulars as time, place, and names. *See,* Magelsson v. Local 518, *supra,* citing the legislative history of the LMRDA.

Commentators have noted that § 101 (a) (5) codifies the common law standards applied by the state and federal courts to union disciplinary proceedings. At common law, the courts voided charges where they were too vague or where the accused was not apprised of the available evidence against him. *See, e. g.,* A. Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819 (1960). The due process of administrative tribunals has been said to be the standard exacted by the state courts in union trials so that it is the substance, not the technical form of the charge, which governs, the test being whether the charge affords the accused an adequate opportunity to prepare his defense. *See, e. g.,* C. W. Summers, The Law of Union Discipline: What the Courts Do in Fact, 70 Yale L.J. 175 (1960).

For the purpose of analysis, the first three charges and their respective specifications may be grouped together. Beyond the circumstances specifying that $30 was received "from employees for their initiation fee"; that, on one occasion in 1966, the plaintiff stated that the money was returned to a female union member through another employee; and that on "several occasions" plaintiff collected $10 for dues,—the specifications do not name any particular union member nor do they set forth any other identifying features. The vice of this generalized accusation is aggravated by the fact that the charged events allegedly occurred over a three-year period, 1965, 1966 and 1967, except for the one incident stated to have occurred "during 1966".

The union undoubtedly had particular union members in mind and could have readily furnished plaintiff with their names.

One cannot assume that an accused is guilty; that he has knowledge of his own derelictions and, therefore, that he has no need to be informed of the factual details of his alleged wrongdoings.

Indubitably, numerous employees entered and left the employ of Walgreen Company during the three-year span of 1965, 1966 and 1967. Serious injustice and substantial prejudice are inflicted upon the plaintiff when he is compelled to stand trial without a reasonable opportunity to prepare rebuttal witnesses and other defense evidence. An *ex post facto* showing that the accused had knowledge of the events surrounding the alleged offenses cannot cure the lack of adequate written notice made mandatory by the statute. *Cf.* Magelssen v. Local 518, *supra.* The Court finds and concludes that the first three charges and specifications were not set out with sufficient particularity to enable plaintiff to prepare a defense. His statutory rights were violated by the procedure that the defendants employed.

Charge No. 4 accuses plaintiff of having failed "to properly represent employees in hearing of grievances." The specifications of this charge place the events "during 1965, 1966 and 1967." The events themselves are given the broad-brush description of having occurred "in various units of the Walgreen Company, including the Yonkers unit and the Massapequa unit, various units of the Restaurant & Waldorf Associates, including the Brasserie and the Zum Zum Room and several units of the Riker's Company".

Manifestly, generalities are piled upon generalities during the named three-year period. There is a total lack of identification of any particular grievances. There is a complete absence of any designation of employees. Realistically considered, the naming of various restaurant chains and constituent units combined with the three-year span is not a reasonable basis for the adequate preparation of a defense. Presumably, defendant Papalexis, the progenitor of the charges and specifications, possessed the particulars that would have illuminated the fourth charge thereby enabling the plaintiff to conduct a meaningful investigation and prepare his defense; but the specifications, like the charge, were couched in highly generalized language. Charge No. 4 and its specifications are fatally flawed.

Charge No. 5 accuses plaintiff of having failed "to represent employees when calling with complaints." The specifications of this charge place the events during the period of 1965, 1966 and 1967 and localize the plaintiff's derelictions "in various units of the Walgreen Company, including the Massapequa store and the Yonkers store and various units of Restaurant & Waldorf Associates, including the Zum Zum Room and Riker's". Charge No. 5 and its related specifications are defective because they neither designate employees nor their complaints nor the approximate time of the alleged incidents nor the particular store or unit involved.

■ Charge No. 6 accuses the plaintiff of having failed "to attend shop meetings". The corresponding specifications declare that these events occurred "during 1965, 1966 and 1967" and that they concerned "units of the Walgreen Company, units of the Riker's Company and the Zum Zum Room in the Pan Am Building". While this charge and specifications are subject to the criticism that they deal with a three-year period in omnibus style, there probably is enough information to enable the plaintiff to prepare for his defense in view of the circumstance that the charge concerns his alleged failure to attend shop meetings in certain named companies. The subject matter of shop meetings is sufficiently narrow in scope and sufficiently related to particular restaurants to serve the practical purpose of enabling the plaintiff to prepare his case. The information supplied enabled plaintiff either to refute his alleged absence from meetings by producing witnesses or documentary evidence, or to explain his absence.

■ Charge No. 7 accuses the plaintiff of having failed "to attend officers staff meetings." The specifications concerning this charge refer to the meetings as having occurred during 1965, 1966 and 1967; state that the plaintiff attended four staff meetings during that period; further state that he attended part of four other staff meetings; and that he was absent from six staff meetings. The specifications contain enough factual data to enable the plaintiff to prepare his defense and are, therefore, adequate.

■ Charge No. 8 accuses the plaintiff of "[p]ersistent and repeated absence from" his "duty as a business agent." The corresponding specifications encompass the period from 1965 to July 1967 and contain the further detail that, during that period, the plaintiff was absent from duty "for a period of 11 months, only 3 of which were due to" him "as vacation time." This charge and its corresponding specifications are sufficient to apprise the plaintiff of the accusation and to enable him to prepare his defense. They are, therefore, found to be adequate.

■ Charge No. 9 accuses the plaintiff of having failed "to enforce provisions of union contract for the benefit of the members of the union." [9] The specifications of this charge are prefaced by the introductory statement that the charge relates to the plaintiff's activities "in the Walgreen Company and in various units of Restaurant Associates, including Riker's, Zum Zum, Brasserie and Trattoria." Then follow seven alleged offenses, each separately paragraphed. The trial committee found plaintiff not guilty on the offenses set forth in the third, fifth and seventh paragraphs; hence, they need not be considered for present purposes. The Court, however, will consider the offenses set forth in the first, second, fourth and sixth paragraphs.

■ The first paragraph charges that "[a]t least sixteen employees in

9. Defendants have not submitted a copy of the by-laws of Local 11, although they have filed a copy of the constitution of defendant's International Union, as an exhibit. A union may discipline members only for offenses set forth in the by-laws and in accordance with the constitution. *See generally*, J. Etelson and F. Smith, Union Discipline Under the Landrum-Griffin Act, *supra*, at 742. The ninth charge is couched in the most general terms. It apparently relates to the enforcement duties of a union officer with respect to "provisions of union contract". In the absence of the union's by-laws, the Court cannot determine whether the violations encompassed by this charge are grounds for loss of union membership. Moreover it is unclear that the seven charges listed under the ninth charge constitute offenses under the by-laws; and, if they are, whether expulsion from the union is the proper penalty. Because the Court disposes of the motion on other grounds, it does not deal with these issues, which may be raised by plaintiff at the trial on the merits.

the Walgreen Company employed in 1965 and 1966 paid no initiation fees and received no union books." Although neither the charge nor its specifications name the sixteen employees, the absence of this information was not prejudicial because, according to the trial committee's report, the plaintiff's defense to this charge was that it was not plaintiff's duty as business agent to collect these initiation fees. In view of the nature of the plaintiff's defense, the Court finds that the charge and its specifications were sufficient.

The second paragraph accuses plaintiff of "[v]isiting Union stores while intoxicated and unable to properly listen to grievances or adjust them in 1966 and 1967." This specification is devoid of informative details. The union stores involved are not named; the grievances referred to are not identified or described; nor is the plaintiff's alleged inability to adjust the grievances delineated. This lack of basic information becomes critical in view of the further circumstance that plaintiff's derelictions are said to have occurred in a two-year period, 1966 and 1967, without any further particularization of time, place or circumstance. Consequently, the Court finds and concludes that this charge and specifications are vitally defective.

The fourth paragraph charges the plaintiff with "[s]triking a cashier at the Brasserie who refused to give" him "credit and tearing up the company's notice to that effect." This incident is alleged to have happened in February, 1966. The Court finds that this charge and specifications are adequate because they name the restaurant and specify the month and year of the incident.

The sixth paragraph accuses the plaintiff of "[b]orrowing large sums of money from workers whom" he is "supposed to represent and from fellow union officers, or using such workers and officers as co-signers on loans." These activities are alleged to have occurred in Walgreen's and Restaurant Associates during 1965, 1966 and 1967. This charge and specifications are fatally defective. They cover a three-year period without further particularization of time. While reference is made to "large sums of money", there is no statement even as to the approximate amount of the sums involved or of any other particular loan. Moreover, the specifications are in the disjunctive and thus present the alternative accusations of borrowing on the one hand and, on the other hand, of using fellow union members and officers as co-signers. But regardless of whether the misconduct consisted in the borrowing or in the use of co-signers, not a single name of any union member or officer is set forth. The Court finds and concludes, therefore, that this charge and specifications are fatally defective.

The Court finds and concludes that the inadequacies in the majority of the charges, as above set forth, violated plaintiff's rights under § 101(a) (5) of the LMRDA, 29 U.S.C. § 411(a) (5) and render the entire proceedings against plaintiff null and void.

Defendants may contend that a finding of guilty on any one of the charges would have justified expulsion; and, therefore, the Court, having found *some* of the charges flawless, should not invalidate the union's action. The Court rejects the foregoing argument.[10] The

---

10. The rationale which allows an appellate court to affirm a conviction on one good count despite errors which invalidate a conviction on a second count, where the judge had imposed concurrent sentences is inapplicable to the present problem.

A separate and distinct sentence must be allocated to each count of an indictment, count by count, although execution of

the separate sentences may run concurrently or consecutively or the imposition or execution of the sentence on one count may be suspended while sentence may be imposed on another count. The separability of the counts and their respective sentences affords an appellate court some flexibility in dealing with a situation where the conviction under one count

evidence presented, in the form of the Report of the Trial Committee and the Minutes of the Executive Board Meeting of October 19, 1967, compels the Court's conclusion that all the charges were considered conjointly and that the penalty of expulsion was imposed on the composite basis of all the findings of guilty. There is no probative indication whatsoever that the trial committee considered or imposed separately a specific penalty for each charge. *See,* Barbour v. Sheet Metal Workers Int'l Ass'n, 263 F.Supp. 724 (E.D.Mich.1964) (where the court characterized a similar argument as "belated rationalization"). *See also,* Jacques v. Local 1418, *supra,* (where the court, having found one charge out of eight adequate, nullified the discipline. The Court notes that the accused union member in *Jacques* had also been denied adequate time in which to prepare his defense).

*The Defense of Laches*

 Plaintiff was expelled from the union on December 6, 1967. The LMRDA contains a built-in exhaustion provision which, in most cases, prevents commencement of a civil action for a period of four months following union discipline. § 101(a) (4) LMRDA, 29 U.S.C. § 411(a) (4). Because plaintiff waited slightly over eight months before commencing this action, defendants charge him with laches. Defendants may not invoke the theory of laches inasmuch as there is not the slightest showing that they have been prejudiced by the delay.[11]

 The Court finds and concludes that, unless plaintiff obtains the requested interlocutory injunctive relief, he will be irreparably harmed because he will be deprived of the rights guaranteed him as a union member to participate in union meetings, to vote for the election of officers and otherwise to participate in union affairs, for which he cannot adequately be compensated in

---

is reversed while the conviction under other counts is affirmed. *See* United States v. Proner, 405 F.2d 943, 945 (2d Cir. 1969).

In sharp contrast, the "sentences" (punishments) in the present case are not severable because punishment was not separately imposed on each charge, charge by charge, but was meted out on the composite basis of all the charges of which plaintiff was found guilty. Where a trial committee, as here, finds a member guilty of eight charges and part of the ninth charge, it may be reasonably assumed that the committee exercised its discretion to impose expulsion on the basis of the cumulative evidence of infractions. Had the committee been dealing with guilt, for example, on only three charges, it may well have meted out a less severe punishment. The circumstance that the committee *arguendo* could have expelled the accused on the basis of guilt on only one charge is not probative of the committee's actual rationale, in the absence of anything in the committee's report to so indicate.

It is a spurious comparison to analogize the present case with one where a jury renders special verdicts of guilty on several counts, some of which are invalidated ultimately because of errors while the verdicts on the good counts are sustained.

Although the Court has held that the written specifications were adequate on some charges upon which plaintiff was found guilty, the punishment imposed upon him was predicated upon his composite guilt of the violations covered by all of the charges of which he was found guilty.

11. In his moving affidavit, plaintiff requested the Court to grant him a preliminary injunction by March 4, 1969, in order that he could participate in union elections to be held on that date. Although plaintiff's cause is not barred by laches, his failure to bring suit until eight months after he had exhausted his internal union appeals greatly attenuates his claim of urgency. The motion calendar in the Southern District of New York is replete with similarly urgent motions which require equally careful deliberation and expeditious disposition; and, in the Court's considered judgment, plaintiff's motion is not entitled to take precedence of other matters of the same character. *Cf.* Fed.R.Civ.P. 65(b).

damages.[12] *See, e.g.,* Axelrod v. Stoltz, 264 F.Supp. 536 (E.D.Pa.1967), aff'd, 391 F.2d 549 (3d Cir. 1968); Cole v. Hall, 339 F.2d 881 (2d Cir. 1965).

The action of defendant-union expelling plaintiff, James Gleason, from membership is hereby declared to be null and void *pendente lite;* and said union, its officers, agents, and servants are enjoined until the trial herein from interfering with or otherwise restricting plaintiff in the exercise of his rights and privileges incident to his membership as an individual member of said union insofar as such action is based upon the expulsion of December 6, 1967.[13]

This holding is without prejudice to defendant-union's right to institute and conduct proper charges against plaintiff for any violation of its Constitution and By-Laws, and to take such other action against him as may be appropriate, in accordance with the governing statute and legal principles.

So ordered.

## II.

*Rule 12(f) Motions*

Defendants have moved to strike the complaint in its entirety or, alternatively, to strike immaterial, impertinent and scandalous matters from the complaint. Fed.R.Civ.P. 12(f).

■■ An entire pleading may be stricken where all of it is immaterial, redundant or in gross violation of Rule 8 of the Federal Rules of Civil Procedure. 2A J. Moore, Federal Practice ¶12.21, at 2316 (2d ed. 1968). A motion to strike immaterial or impertinent matter from a pleading will ordinarily not be granted unless the matter sought to be stricken clearly can have "no possible relation" to the matter in controversy. *See, e.g.,* Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953); Mitchell v. Hart, 41 F.R.D. 138 (S.D.N.Y.1966); *See also* 2A J. Moore, Federal Practice ¶12.21, at 2317–2320.

■ Even relevant portions of a complaint may be stricken where they are scandalous and are set out in needless detail. 2A J. Moore, Federal Practice ¶12.21, at 2313.

In light of these standards, it is necessary, in order to evaluate defendants' objections, to determine the issues in controversy.

Defendants assert that plaintiff's complaint is limited to a claim that procedural due process was denied under § 101(a) (5) of the LMRDA, 29 U.S.C. § 411(a) (5). The complaint does not justify such a narrow reading. In addition to a host of procedural irregularities which, plaintiff alleges, infected the trial committee's hearing, plaintiff contends that he was expelled from defendant-union pursuant to a conspiracy whose objective was to deprive him of rights guaranteed to him by § 101(a) (1), §

12. Where there is a finding of probability of success on the merits and of irreparable injury to plaintiff, the potential harm to a union flowing from the grant of a preliminary injunction is minimal—being simply deferred punishment of plaintiff, in the event that the disputed discipline is ultimately sustained. *See,* J. Etelson and F. Smith, Union Discipline Under the Landrum-Griffin Act, *supra,* at 763. The effect of the injunctive relief herein granted is not to restore plaintiff to his position as a union officer, a position which the union claims plaintiff has abused and neglected. However, because the Court restrains the union from carrying out the punishment imposed pursuant to the expulsion of December 6, 1967, the deprivation of plain-

tiff's right to run for union office is nullified pending a determination on the merits. See discussion in J. Etelson and F. Smith, Union Discipine Under the Landrum-Griffin Act, *supra,* at 763, n. 58.

13. The Court's order does not, as requested by plaintiff, by its terms, restrain defendants from interfering with plaintiff's rights of free speech and assembly because the Court's findings and conclusions of law are based solely on the narrow ground of inadequate written specifications. Consequently, there has been no finding of probability of ultimate success on the merits of plaintiff's conspiracy allegations.

101(a) (2) and § 101(a) (4) of the LMRDA..

Section 101(a) (5) of the LMRDA, 29 U.S.C. § 411(a) (5) was enacted to insure that union disciplinary proceedings would be conducted in accordance with basic due process criteria. In his complaint, plaintiff asserts that, despite ostensible compliance with due process at a union trial, if the actual motive and purpose for imposing discipline are to thwart the exercise of rights guaranteed to every union member by the other subsections of § 101(a), the result is a denial of a "full and fair hearing" in violation of § 101(a) (5).

Structured on this theory, the complaint attempts to describe an alleged conspiracy by defendants and others to silence and strip him of political power within the union. What gave rise to the conspiracy was plaintiff's alleged knowledge of various acts of misconduct by union officials—specifically, the misappropriation of union funds and the attempted bribery of an insurance investigator who was conducting an inquiry into misuse of funds—and plaintiff's communication of this knowledge to fellow union members and to State investigative authorities.

The complaint charges that plaintiff was subjected to reprisals because he did not relinquish his union office or his political influence, and that, as part of a conspiracy to silence him, the individual defendants caused plaintiff to be beaten up, attempted to disassociate him from his rank and file supporters, and brought trumped up and trivial charges against him in order to effect his expulsion from the union.

The Court has already observed (*supra*, at page 10, n. 6) that no case has ever presented the question of whether § 101 (a) (5) of the LMRDA goes beyond procedural due process and protects a union member against improperly motivated acts.[14]

Plaintiff's "conspiracy theory" is, however, cognizable under § 609 of the LMRDA, 29 U.S.C. § 529. Section 609 "makes doubly secure the protection of the members in the exercise of their rights", Salzhandler v. Caputo, 316 F.2d 445, 449 (2d Cir. 1963), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963), by making it unlawful to expel a member for exercising any right to which he is statutorily entitled. *Accord*, Grand Lodge International Ass'n of Machinists v. King, 335 F.2d 340, 345 (9 Cir. 1964), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). Consequently, even where § 101(a) (5) has not been violated or is inapplicable,[15] proof that a un-

14. One circuit court, in reversing a summary judgment granted by the district court in favor of the defendant-union, declared:

"We believe that the allegations of conspiracy present a genuine issue as to a material fact. * * * If appellees conspired and agreed to do, and did do, the acts above mentioned, then the entire internal union proceedings, including the appellate proceedings, would be a sham and fraud and constitute no trial at all, no matter how fair and regular such proceedings might appear on the record. If the expulsion of appellant is wrongful, he has remained a member in good standing of the Union and has unlawfully been deprived of some of the rights afforded to him by the 'Act,' and is entitled to some relief."
Addison v. Grand Lodge of International

Ass'n of Machinists, 318 F.2d 504, 508 (9 Cir. 1963).

15. Heretofore, the courts have had to distinguish between § 101(a) (5) and § 609 where a union member who was also an official had been removed from office and claimed that the removal was in violation of his rights under § 101. It has been held that § 101(a) (5) does not require the application of due process to the summary removal of a union officer. *See, e. g.*, Grand Lodge International Ass'n of Machinists v. King, 335 F.2d 340, 341–43 (9th Cir. 1963), cert. denied, 379 U.S. 920, 85 S.Ct. 274 (1964). Because § 101(a) (5) could not be invoked to protect him against arbitrary removal, § 609 was read by the courts to reach *any* union discipline (including arbitrary removal from office) which was imposed

ion member was disciplined (in this case expelled) because he exercised his right to engage in intra-union political activity guaranteed by § 101(a) (1), and § 101 (a) (2) entitles him to relief under the LMRDA. *See, e.g.,* Gulickson v. Forest, 290 F.Supp. 457, 464 (E.D.N.Y.1968); George v. Bricklayers, Masons and Plasterers Int'l, 255 F.Supp. 239 (E.D.Wis. 1966).[16]

■■■ Although the complaint does not cite § 609, where the evidence at the plenary trial warrants relief under that section, the Court can grant it.

Expressing doubt that conspiracy allegations are necessary or even helpful where a violation of § 609 is charged, one court has commented that they "appear to be more in the nature of evidence relative to the illegality of the expulsion rather than allegations necessary to establish the wrong". *See* Cole v. Hall, 35 F.R.D. 4, 8 (E.D.N.Y. 1964). The suggested distinction is overtechnical: it is precisely the improper motivation and underlying purpose of the conspiracy which illegitimatizes the expulsion. In any event, the court in *Cole* refused to strike the conspiracy allegations as impertinent. *See, id.* at 8.

■■■ Having delineated the nature of the issues raised by the complaint herein, the Court concludes that any allegations relevant to establishing the described conspiracy, although background or evidentiary in nature, are not immaterial or impertinent. A specific analysis of the objectionable paragraphs follows.

Defendants assert that paragraphs 7, 8, 9, 10, 16, 17, 18 and 19 are immaterial. The Court rejects defendants' contentions with respect to all the mentioned paragraphs, save ¶9, and part of ¶8.

Paragraphs 7 and 8 allude to the fact that the McClellan Senate Investigation Committee investigated defendant-union in 1966 with respect to the misappropriation of union funds.

Paragraph 10 refers to the findings of the Insurance Department of the State of New York that several trustees (including defendant Papalexis) of the union welfare fund were responsible, by their negligent and wrongful acts, for depletions of the fund. Plaintiff's position at the trial, as far as can be gleaned from the present record, will probably be that, because plaintiff distributed leaflets among union members referring to the McClellan Investigation and to the findings of the State Insurance Investigation—which leaflets apparently accused the union leadership with mismanagement—defendants conspired to retaliate and silence plaintiff. This being the ostensible theory, paragraphs 7, 8 and 10 of the complaint are material, except as the Court is about to note.

The Court strikes that portion of paragraph 8 which reads "allegedly ques-

---

in retaliation for the exercise of § 101 rights. *Id.*; *see,* J. Etelson and F. Smith, Union Discipline Under the Landrum-Griffin Act, *supra,* at 737–738. Thus, a union officer has no rights to procedural due process when he is summarily removed from office. But if he contends that his removal was for exercising his § 101(a) rights, § 609 is properly invoked.

16. The Ninth Circuit carefully distinguished between these two sections:
 "Sections 101(a) (5) and 609 have wholly different purposes, * * *.
 Section 101(a) (5) guarantees to union members * * * that they shall be accorded procedural due process before being subject to disciplinary ac-

tion, for whatever reason. Section 609, on the other hand, has no bearing upon the procedures to be followed in disciplining union members. * * * [It] is not a source of additional independent rights, but is an enforcement provision, designed * * * to effectuate rights conferred in other sections of the Act by making it unlawful to punish members who seek to exercise such rights. Punishment for the exercise of these rights is prohibited by section 609 whether inflicted summarily or after a full panoply of procedural protections."

Grand Lodge International Ass'n of Machinists v. King, *supra,* at 345.

tionable business associations and business associates of defendant Ferrara". That this subject was under investigation by the McClellan Committee does not appear to be relevant at this juncture in the proceedings, and it is not a necessary element of the conspiracy charge. This exclusion does not prejudice plaintiff from attempting to introduce evidence in proof of this alleged fact at the plenary trial; and the Court expresses no opinion as to its ultimate materiality.

For similar reasons, paragraph 9 of the complaint is to be stricken in its entirety. The fact that defendant-union hired a convicted person does not appear to be relevant to the alleged conspiracy against plaintiff.

Paragraphs 16, 17 and 18 describe the measures allegedly taken by defendants to intimidate and coerce plaintiff with the intent of silencing him. The Court cannot now rule that they have "no possible relation" to the matter in controversy.

Paragraph 19 is attacked as being both impertinent and scandalous. The complaint alleges that plaintiff was pistol-whipped by three hoodlums, and the inference sought to be created is that this act was instigated by the individual defendants. This allegation is relevant to the charged conspiracy. *See,* 2A J. Moore, Federal Practice, ¶ 12.21, at 231.

Defendants claim that paragraphs 11, 12, 15 and 20 should be stricken as scandalous. Defendants have not demanded a trial by jury. Therefore, there is no factor of possible prejudice in the minds of a jury implanted by allegedly scandalous allegations in a complaint.

■ Paragraph 11 asserts that officers of defendant-union conspired to bribe an official of the New York State Insurance Department. The Court has doubts about the materiality of this allegation. A union member is, under the provisions of the LMRDA, free to criticize union officials openly and even to libel and slander them without being subject to union discipline. *See, e.g.,* Giordani v. Upholsterers Int'l Union of North America, 403 F.2d 85 (2d Cir. 1968); Salzhandler v. Caputo, *supra;* Cole v. Hall, 339 F.2d 881 (2d Cir. 1965). If plaintiff did in fact accuse defendants of a conspiracy to bribe officials, the truth or falsity of the accusation in no way affects plaintiff's right of free speech. If defendants, in the face of such unfavorable criticism, conspired to expel plaintiff, they unlawfully disciplined plaintiff in violation of § 609 and § 101(a) (2), even if plaintiff's accusations were false and malicious. Thus, for plaintiff to recover in this action, he need prove only that defendants reacted improperly to his accusations,— not that defendants were in fact guilty of the accusations.

The prejudicial nature of the accusation made in paragraph 11 considered in conjunction with its doubtful relevance warrants the striking of paragraph 11 in its entirety. Plaintiff will not be harmed. The present ruling does not constitute a definitive adjudication of the ultimate materiality and relevance of the evidence proving the facts alleged in paragraph 11; these are matters reserved for the trial judge.

Paragraph 12, charging defendant Ferrara with improper use of union funds, is subject to the same analysis and criticism as paragraph 11, and is hereby ordered stricken.

Paragraph 15 charges that defendants feared plaintiff because he knew of the irregularities committed by union officers and welfare fund trustees. This allegation is relevant to the issue of defendants' motivation and is sufficiently inoffensive to withstand a motion to strike.

Paragraph 20 alleges that defendants Ferrara and Papalexis offered to pay plaintiff if he resigned his office in defendant-union. Although such conduct may be scandalous, it is relevant to the proof of defendants' intent and motive and should, therefore, not be stricken.

Paragraph 14 of the complaint is stricken because defendants cannot fairly admit or deny its allegations.

Defendants have also moved to strike paragraph 44 of the complaint and paragraph 4 of plaintiff's prayer for relief on the ground that plaintiff is requesting the Court to determine his right to run for elective office. Defendants misconstrue the request for relief. In paragraph 44, plaintiff simply seeks to be restored as a member of defendant-union with full membership rights. Plaintiff does not ask the Court to determine his right to run for elective office. He does want to eliminate the effects of his wrongful expulsion.

Reinstatement does have the effect of restoring plaintiff's full membership rights, including his eligibility to run for union office.

Defendants' motion to strike the pleadings in their entirety is denied. Defendants' motion to strike portions of the complaint is denied in part and granted in part, in accordance with the views expressed in this opinion.

Plaintiff is ordered to file, within fifteen days after the date of the filing of this opinion, an amended complaint in compliance with the rulings set forth in this opinion.

So ordered.

APPENDIX A

EXHIBIT 1

AFL–CIO LOCAL 11 236 West 40th Street New York 18, N. Y. LOngacre 4–3550

CHAIN SERVICE RESTAURANT, LUNCHEONETTE & SODA FOUNTAIN EMPLOYEES UNION

August 31, 1967

Mr. Arthur Russell, Secretary-Treasurer
Chain Service Restaurant, Luncheonette &
Soda Fountain Employees Union, Local 11
236 West 40th Street
New York City, New York 10018

Dear Sir & Brother:

I hereby prefer charges against Brother James Gleason for violation of Article 20, Sections—B, C, E, H and I of the Constitution of the Hotel & Restaurant Employees and Bartenders International Union, in the following respects:

1. Collecting monies from members of the union for the payment of initiation fees and/or dues and failing to turn such funds into the treasury of this local union.

2. Collecting money from members of the union for the payment of initiation fees and dues and not giving proper receipts therefor.

3. Collecting money from a member of the union for the payment of initiation fee and without authorization, returning the money to the member.

4. Failure to properly represent employees in hearing of grievances.

5. Failure to represent employees when calling with complaints.

6. Failure to attend shop meetings.

7. Failure to attend officers staff meetings.

8. Persistent and repeated absence from his duty as a business agent.

9. Failure to enforce provisions of union contract for the benefit of the members of the union.

I request that a trial committee be appointed to hear these charges.

Fraternally yours,
(s) George Papalexis

GEORGE PAPALEXIS
General Business Agent

GP:jd

## APPENDIX B

### EXHIBIT 5

AFL–CIO LOCAL 11 236 West 40th Street – New York 18, N. Y. – LOngacre 4–3550
CHAIN SERVICE RESTAURANT, LUNCHEONETTE & SODA FOUNTAIN
EMPLOYEES UNION

October 4, 1967

Mr. James Gleason
421 West Main Street
Babylon, New York

Dear Sir and Brother:

This is in reply to your letter dated September 29, 1967 wherein you request specifications of the charges filed against you by Brother George Papalexis on August 31, 1967.

Your letter was received at this office on October 2, 1967, only one day before the date set for the meeting of the Trial Board to hear these charges. It was therefore impossible to obtain specifications for you and still conduct the trial on the date originally fixed.

I communicated with Brother George Papalexis, General Business Agent of the Local Union, and he has given me the following information concerning the charges filed:

Charge No. 1. Collecting monies from members of the Union for payment of initiation fees and/or dues and failing to turn such funds into the treasury of the Local Union.

These events relate to employees of the Walgreen company who are required to join this Local Union according to the terms of the collective bargaining agreement. They took place during 1965, 1966 and 1967.

On at least two occasions, you collected $30 from employees for their initiation fee, gave no receipts and the money was never turned in. On one of these occasions during 1966, you stated that the money was returned to the woman through another employee and not turned in to the Union for initiation fees.

On several occasions you collected $10 for dues, gave no receipts and the money was never turned in.

Charge No. 2. Collecting money from members of the Union for the payment of initiation fees and dues and not giving the proper receipts therefor.

This charge relates to the instances set forth above as well as to other employees of the Walgreen Company during 1965, 1966 and 1967.

Charge No. 3. Collecting money from a member of the Union for the payment of initiation fee and without authorization returning money to the member.

This relates to the facts set forth under Charge No. 1 above.

Charge No. 4. Failure to properly represent employees in hearing of grievances.

These events took place in various units of the Walgreen Company, including the Yonkers unit and the Massapequa unit, various units of the Restaurant & Waldorf Associates, including the Brasserie and the Zum Zum Room and several units of the Riker's Company during 1965, 1966 and 1967.

Charge No. 5. Failure to represent employees when calling with complaints.

These events took place in various units of the Walgreen Company, including the Massapequa store and the Yonkers store and various units of Restaurant & Waldorf Associates, including the Zum Zum Room and Riker's during 1965, 1966 and 1967.

Charge No. 6. Failure to attend shop meetings.

These events concern units of the Walgreen Company, units of the Riker's Company and the Zum Zum Room in the Pan Am Building during 1965, 1966 and 1967.

Charge No. 7. Failure to attend officers staff meetings.

These concern staff meetings during 1965, 1966 and 1967, during which period you attended all of four staff meetings, attended part of four other staff meetings and were absent from six staff meetings.

Charge No. 8. Persistent and repeated absence from duty as a business agent.

This related to the period from 1965 to July 1967, during which you were absent from duty for a period of 11 months, only 3 of which were due to you as vacation time.

Charge No. 9. Failure to enforce provisions of union contract for the benefit of the members of the Union. This related to your activities in the Walgreen Company and in various units of Restaurant Associates, including Riker's, Zum Zum, Brasserie and Trattoria, and includes the following:

At least sixteen employees in the Walgreen Company employed in 1965 and 1966 paid no initiation fees and received no union books.

Visiting Union stores while intoxicated and unable to properly listen to grievances or adjust them in 1966 and 1967.

Cashing personal checks with cashiers in stores that you visit on Union business without sufficient funds to cover the checks. These events happened during 1965, 1966 and 1967.

Striking a cashier at the Brasserie who refused to give you credit and tearing up the company's notice to that effect. This happened in February 1966.

Charging meals in restaurants where you were supposed to enforce the union contract and not paying the bills when presented.

This happened in various units of Restaurant Associates during 1965, 1966 and 1967.

Borrowing large sums of money from workers whom you are supposed to represent and from fellow union officers, or using such workers and officers as co-signers on loans. This happened in Walgreen's and Restaurant Associates during 1965, 1966 and 1967.

Threatening a fellow union member that he would be in for a lot of trouble if he continued to act as shop steward in a Walgreen unit. This happened during August or September of 1967.

I am now further informing you that the hearing upon these charges before the Trial Board will be held at the office of this Union, 236 West 40th Street, New York, New York on Monday, October 16, 1967 at 10 A. M. Please be present with your witnesses ready to start the trial at this time.

> Fraternally yours,
> (s) Arthur Russell
>
> ARTHUR RUSSELL
> Secretary-Treasurer

AR:jd