WILLIAM E. LAUER and Others, Respondents, *v*. HAROLD N. RAYMOND and Others, Appellants.

First Department, January 16, 1920.

Contract — agreement to purchase stock if certain persons are not interested in corporation — rescission of contract for breach of condition thereof — action for money had and received on implied promise to repay if condition be broken — allegations of fraud superfluous and immaterial — knowledge of defendants immaterial — rescission justified irrespective of value of stock.

Where the plaintiffs alleged in substance that they purchased certain stocks of the defendant stockbrokers solely in reliance upon the defendants' assurance that certain persons obnoxious to the plaintiffs were not inter-

ested in the corporation and would not become interested therein, which representation by the defendants is alleged to have been knowingly false and fraudulent as evinced by the fact that one of the objectionable persons was elected director on the formation of the corporation, the plaintiffs, having established said facts at trial and having expressly waived any right to recover upon the allegations of fraud and basing·the action on their right to recover solely for moneys had and received on contract, are entitled to recover on the latter ground, a tender of restitution of the stock having been made by them.

Such action, notwithstanding the allegations of fraud, is based upon the implied promise of the defendants to repay the moneys which the plaintiffs paid in reliance upon the defendants' assurance that the objectionable persons were not interested in the corporation.

The plaintiffs' recovery does not depend upon *scienter* on the defendants' part, nor need the same be shown, for the mere presence of allegations which might support a recovery for fraud if proved does not change an action to recover moneys paid on contract after rescission for breach of condition into an action for fraud.

The right of rescission is not confined to cases where the injured party has been induced to contract through false and fraudulent representations.

A contract may be rescinded by reason of a breach of a condition.

The plaintiffs' right to recover as aforesaid is not affected by the fact that the stock had not decreased in value because of the connection therewith of the persons objectionable to the plaintiffs, the value of the stock being immaterial.

APPEAL by the defendants, Harold N. Raymond and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 20th day of June, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day, denying defendants' motion for a new trial made upon the minutes.

*Daniel P. Hays* of counsel [*Hays, Hershfield & Wolf*, attorneys], for the appellants.

*John S. Wise, Jr.*, for the respondents.

MERRELL, J.:

This action was brought to recover the sum of $6,250, with interest, said sum having been paid by plaintiffs to defendants on or about June 8, 1916, for 500 shares of the capital stock of the United Zinc Smelting Corporation. The complaint alleges the copartnership of the plaintiffs under the firm name and

style of William E. Lauer & Co., and also that the defendants were copartners engaged in the business of stock brokerage at the borough of Manhattan, city of New York, under the firm name and style of Raymond, Starr & Co. It is further alleged in said complaint that on or about June 5, 1916, the defendants offered to sell to plaintiffs capital stock of the said United Zinc Smelting Corporation, a corporation organized under and pursuant to the laws of the State of New York; that the plaintiffs then and there stated to the defendants that they would not purchase said stock or become interested in said corporation if certain persons then mentioned by the plaintiffs to the defendants were connected with said corporation; that thereupon the defendants knowingly, falsely and fraudulently stated and represented to the plaintiffs that none of said persons mentioned by plaintiffs were in any way associated with the said company or its business; that plaintiffs relied upon said representations of the defendants and were induced thereby to purchase and did purchase from defendants temporary certificates of said smelting corporation for 500 shares of the capital stock thereof, and that thereafter on June 8, 1916, the plaintiffs paid to the defendants for said stock the sum of $6,250. The plaintiffs in their complaint further allege that said statements and representations of the defendants that none of the objectionable persons were connected in any manner or were associated with the business of said corporation were each and every of them false and fraudulent at the time when made and were known by the defendants to be false when they were made; that said statements and representations were calculated to deceive the plaintiffs and were made by the defendants with the intent to deceive and defraud said plaintiffs; that prior to the commencement of this action the plaintiffs, upon learning of the falsity of said representations, tendered and offered to deliver to the defendants said temporary certificates of stock of said corporation and demanded of and from defendants the repayment of the moneys which plaintiffs had paid for said stock; that defendants refused to accept the return of such certificates and refused to repay to the plaintiffs said moneys or any part thereof; that by reason of said facts defendants wrongfully had and received from plaintiffs

the said sum of $6,250, and that they are, therefore, indebted to plaintiffs in said amount, with interest; that plaintiffs were still ready, able and willing to deliver said temporary certificates of stock to the defendants.

The action was placed upon the calendar and tried as a contract case in Part XVIII of the Trial Term, assigned for the trial of contract cases, and a verdict was rendered in plaintiffs' favor and against the defendants for $7,085.41 damages, upon which the judgment appealed from was entered.

The defendants took the position upon the trial, and insist upon this appeal, that upon the allegations of the complaint the action is to recover damages for fraud, and that plaintiffs failed to produce evidence upon the trial showing knowledge on defendants' part of the falsity of the alleged representations.

At the opening of the trial counsel for the plaintiffs stated in open court, for the purposes of the record, that the case had been placed upon the contract calendar, notwithstanding allegations of fraud in the complaint, and that the action was based entirely upon the alleged misrepresentations of material facts to the plaintiffs, for moneys had and received, to recover on contract and demand, and not in an action for fraud.

There is not much dispute in the evidence as to the facts surrounding the transaction between these parties. The proofs show that in April, 1916, the plaintiffs were waited upon by the defendant Starr, who stated to Samuel M. Goldsmith, one of the plaintiffs, who represented the plaintiffs' firm in the transaction, that the defendants were going to bring out a company, and that they would like the plaintiffs to have some shares in it; that Goldsmith inquired as to what it was, and Starr replied: " It is a combination of zinc companies, and we bought out several concerns, amongst them the Lissberger concern." Goldsmith testifies that he replied, addressing himself to Starr: " Bill, if the Lissbergers are connected in this company in any manner, shape or form, directors or otherwise, I don't want * * * to have any part in it." At that time Goldsmith testified that he was representing his firm, the plaintiffs herein. Goldsmith testified that, in response to his refusal to participate in the new concern if the Lissbergers were interested, Starr replied: " They are not. * * * We have bought them out." That Goldsmith then replied: " If you

have bought them out, lock, stock and barrel, all right, put my firm down for 500 shares." Later on and on June 6, 1916, five certificates of stock, being temporary certificates Nos. 113 to 117, inclusive, of 100 shares each, of the United Zinc Smelting Corporation, were issued and the plaintiffs were called upon to take said stock and did take and pay for the same on June 8, 1916, paying therefor at the rate of $12.50 per share, or, in the aggregate, $6,250, in cash.

The first conversation between the plaintiff Goldsmith and the defendant Starr, wherein defendants sought to interest plaintiffs in the projected corporation, occurred on or about April 11, 1916. Thereafter and on the 19th of April, 1916, the corporation was organized. On April 25, 1916, one of the Lissbergers, to whom plaintiff Goldsmith had objected, was elected a director of the corporation. The plaintiffs were ignorant of the election of Lissberger to the directorate at the time they paid for said 500 shares of stock, but a few weeks later for the first time learned that he had been made a director of the newly-organized corporation. Goldsmith, representing his firm, then called upon the defendant Starr, who had induced him and plaintiffs' firm to take said stock, and complained that the plaintiffs had not been used fairly, and that the objectionable Lissberger had been taken in as a director of the company, and reminded said defendant that he, Goldsmith, had told him particularly that he would not become interested in the concern if those people, referring to the Lissbergers, were interested, and that he had been assured by defendant that they were not interested, and that the defendants had bought up the Lissbergers completely, and demand was then made upon defendant that they repay to plaintiffs the money which they had paid for said stock.

As to the initial representations made by Starr, that the defendants had bought out all interest of the Lissbergers in the zinc business, and that they were not to be interested in the corporation, plaintiff Goldsmith is corroborated, not only by the testimony of his copartner, the plaintiff Lauer, but also by the testimony of the defendant Starr himself, Starr testifying that Goldsmith wanted nothing to do with the corporation if the Lissbergers were connected with it. In March, 1917, the plaintiffs, feeling dissatisfied with the transaction, tendered

to the defendants the 500 shares of stock which had been sold to them by defendants upon the condition aforesaid, and demanded a return of the moneys which plaintiffs had paid therefor. The defendants refused to receive the stock thus tendered or to repay said moneys. Thereupon this action was brought as for money had and received after rescission of said contract, by tender of said stock and demand for repayment of the moneys paid therefor.

The evidence is ample in the case to support the contention of the plaintiffs as to the making of the false representations which induced the plaintiffs to purchase said stock and to pay their money therefor. The fact of the tender of the stock and the demand for the repayment of said money is admitted by the defendants in their answer.

The defendants take the position that such representations as were made were only concerning conditions existing at the time the representations were made, and that it does not appear that at that time any Lissberger was connected with the corporation. But the evidence clearly indicates that the plaintiffs, as a condition of their becoming interested in the corporation to be formed, were insisting upon assurances by defendants, not only that the Lissbergers were not then interested but that they should not thereafter become in any manner interested therein, and plaintiffs' consent to become interested in the organization of the new corporation and to purchase of its stock was only upon the understanding and the assurance of the defendants that the Lissbergers were not then and should not thereafter in any manner be connected with the concern. That was a continuing condition, and when Lissberger, within a week after the organization of the corporation, became a director, such condition clearly was violated, and the plaintiffs were free to rescind the contract and return the stock which they had received and to demand back the moneys which they had paid therefor. Failing to obtain the same, they had a clear right to sue upon an implied promise on defendants' part to pay back the moneys which plaintiffs had paid them in reliance upon their assurance that the Lissbergers were not to be interested in the corporation.

It requires no very violent stretch of credulity to believe at the time the defendant Starr, in an effort to interest plaintiffs'

firm and to overcome their objections, assured Goldsmith that defendants had bought out the Lissbergers, that such was not the fact, and that the purchase of the interest of the objectionable individuals was not as complete as Starr pretended. The election of Lissberger to the directorate of the new concern within the week following its incorporation arouses suspicion that that person had not been eliminated as completely as Starr wished plaintiffs to believe. It is a fair inference from such early participation in the affairs of the new corporation, that Lissberger, who had been absorbed by the new concern, was, in fact, interested in the reorganization of the zinc smelting interests, and that defendants were not in ignorance thereof. But defendants' knowledge that he was interested when plaintiffs' subscription was obtained, or that he was later to become interested in the affairs of the corporation, is not essential to a recovery by plaintiffs of the moneys which they paid for said stock. They purchased the stock of defendants upon the assurance of the latter that the Lissbergers should not participate in the affairs of the corporation. Plaintiffs made that as a condition of purchase. When that condition was broken they had a legal right to return the stock which the fair promises of the defendants had induced them to purchase, and to insist upon repayment of the moneys with which defendants had induced them to part.

Appellants argue that because the complaint contains allegations appropriate to an action for damges for fraud, the plaintiffs can only recover upon the theory of fraud, and that the evidence did not show *scienter* on defendants' part and was insufficient to justify the verdict rendered by the jury. This position of the appellants is unsound. The mere presence of allegations in the complaint, which, if established by the evidence, would have supported a recovery of damages for fraud, does not change an action to recover moneys paid on contract after rescission for breach of condition into an action for fraud. The allegations of fraud may properly be disregarded. (*Byxbie* v. *Wood*, 24 N. Y. 607; *Neftel* v. *Lightstone*, 77 id. 96; *People* v. *Wood*, 121 id. 522, 528, 529.) Plaintiffs' recovery here has not been under the allegation of fraud in the making of the contract, but rests upon defendants' implied contract to repay to plaintiffs, after their rescission of the

contract of sale and demand thereof, the moneys which they had paid to defendants under said false representations. Such false and fraudulent representations have no immediate connection with the contract upon which plaintiffs have recovered. The falsity of defendants' assurances that the Lissbergers were not to have part in the corporation gave to plaintiffs the right to rescind the contract entered into upon such condition. When once the contract was rescinded by prompt tender back of the stock and demand for the return of plaintiffs' money, then there at once was born an assumed obligation on defendants' part in *indebitatus assumpsit* to repay to plaintiffs the money with which they had parted. (*Freer* v. *Denton*, 61 N. Y. 492; *Novotny* v. *Kosloff*, 214 id. 12; *Byxbie* v. *Wood, supra.*)

Most frequently contracts are rescinded because of the perpetration of fraud in their procurement. But rescission is not confined to cases where the injured party has been induced to contract through false and fraudulent representations. A contract may be rescinded by reason of the breach of a condition, as in the case before us. Black on Rescission of Contracts (Vol. 1, § 213) states the rule as follows:

" In numerous cases the courts have refused rescission of a contract on the ground of the breach of a condition subsequent, on the general principle that there is in such cases an adequate remedy at law by an action for damages. But the true rule appears to be that rescission or cancellation may properly be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or *so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted.* For example, where a lease contains a provision requiring the lessor to furnish the tenant with steam, heat, and uniform power for the operation of his machinery, a failure to comply justifies the tenant in vacating the premises and refusing to pay rent. So, where a company which was the owner of much real estate in a town, and largely engaged in building, sold a house and lot to a house painter, agreeing to give him the painting for the company so long as his work was satisfactory, he may rescind on showing that no

such work was given to him, although he was ready and able to perform it and willing to do so for a reasonable compensation. Again, where it is a part of the consideration for the purchase of stock in a corporation that the purchaser, as soon as qualified, shall be appointed treasurer and business manager of the company, and this agreement is not fulfilled, it is cause for rescission on his part. *This rule is also applicable where the stock is purchased on the express agreement that those who formerly controlled the company shall not be connected with it after its reorganization,* and where stock is delivered to an officer of the corporation under an agreement that it shall be transferred by him to a certain capital list to induce him to give the corporation financial and other assistance. Again, where the consideration of a contract includes an agreement on the part of one of the parties to make loans or advances to the other, to pay his debts, or to furnish him money for living expenses, and performance of such agreement is refused, a case for rescission arises."

Many other instances might be mentioned justifying a rescission of contract for breach of condition though the element of fraud be absent, and the decisions of the courts uphold the same.

In *Seymour* v. *Detroit Copper & Brass Rolling Mills* (56 Mich. 117; 22 N. W. Rep. 317) the plaintiff entered into a contract with the president of the defendant to take charge of its works at an annual salary of $3,000 and to take certain stock in consideration of being elected a director and general superintendent of the company. Plaintiff fully performed the contract on his part. He subscribed for the stock and gave his promissory note in payment therefor, and afterwards paid $1,000 and interest upon the note, and the defendant paid him for his services, as agreed, but failed to elect him a director and superintendent of the company. Thereupon plaintiff tendered back the stock which had been transferred to him and demanded repayment to him of the money he had paid for said stock. The defendant refused to refund said money, and plaintiff brought action to recover the same, and the court properly held that plaintiff was entitled to rescind the contract and recover the amount paid.

The facts in the case of *Meinershagen* v. *Taylor* (169 Mo. App.

12; 154 S. W. Rep. 886) are almost identical with those in the case before us. In that case the plaintiff purchased ten shares of the capital stock of a corporation known as the Taylor-Woodruff Dry Goods Company, then in process of reorganization by the defendants, paying defendants $1,000 therefor. Defendants failed to deliver the stock purchased, but delivered to plaintiff in lieu thereof an equal number of shares of the stock of the Swofford Bros. Dry Goods Company. At the time of the purchase of the stock offered by defendants, plaintiff refused to take any stock of the concern if the Swoffords were to be connected with it. In purchasing the stock, plaintiff, almost in the same words used by the plaintiffs in the case at bar, said: " I will take stock in that concern, providing Mr. Swofford has no connection with the company in any way." He promptly, on discovery of the breach of condition, tendered back the stock which he had received and demanded the return of his money. Defendants refused to receive back the stock or to return the plaintiff's money, and he sued to recover the same, and a recovery was allowed. The court then said, with reference to plaintiff's right to rescind (p. 21): " Here the representations and agreements in question were expressly made conditions precedent and so understood by both parties. The condition was material and important. Plaintiff did not wish to be associated in any business enterprise with the Swofford brothers. Whether his reason was mere personal dislike, or a lack of confidence in their business methods or reputation, is immaterial. He had a right to choose his business associates and to enter into a contract that would give effect to such right. When he received the certificate and discovered that the conditions of the sale had not been performed by defendants, he had the choice of two remedies, viz., first, that of a rescission of the contract; and, second, that of accepting and standing on the contract and suing at law to recover the damages he had sustained in consequence of the breach of defendants."

In the present case plaintiffs elected to rescind upon discovery of the breach of the condition upon which they had purchased the stock. I think in so doing plaintiffs were quite within their legal rights.

Appellants urge that there is no proof that the stock of

the corporation was lessened in value because of the connection of the Lissbergers therewith. That matter, it seems to me, is quite aside from the issue. Whatever their reason may have been, the plaintiffs had an absolute right, as a condition for their purchasing the stock in question, to insist that the Lissbergers should not be or become interested in the corporation. They had a right to choose their business associates and to decline to invest in a concern with which the Lissbergers were connected. They were assured by the defendants that the objectionable parties would not participate therein. The condition being thereafter broken, the plaintiffs were free to rescind the contract and to demand back the moneys which they had paid relying upon the representations of the defendants.

The appellants assign errors in the reception of evidence, and also upon the refusal of the court to charge the jury as requested by the defendants. I find no ground for reversal in either of these alleged errors.

The judgment and order appealed from should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Judgment and order affirmed, with costs.