Gerald LIPSKY, Executor under the Will of Walden Robert Cassotto (a/k/a Bobby Darin), Deceased, Plaintiff-Appellant,

v.

COMMONWEALTH UNITED CORPORATION (now known as Iota Industries, Inc.), et al., Defendants-Appellees.

No. 37, Docket 76–7125.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1976.

Decided Dec. 1, 1976.

Patterson, Belknap & Webb, New York City (by Thomas Thacher and William J. Muller, New York City), for plaintiff-appellant.

Burns, Van Kirk, Greene & Kafer, New York City (by William D. Greene and James P. Corcoran, New York City), for defendants-appellees Iota Industries, Inc. and Commonwealth United Music, Inc.

Lord, Day & Lord, New York City (by Thomas F. Daly, R. Scott Greathead, and Richard Gaines, New York City), for defendants-appellees The Hudson Bay Music Co. (formerly known as Alley-Street Music Venture), Alley Music Corp. and Street Songs, Inc.

Before FEINBERG and VAN GRAAFEILAND, Circuit Judges, and MOTLEY, District Judge.*

MOTLEY, District Judge:

Appellants appeal from two orders of the District Court for the Southern District of New York. The first of these orders struck certain portions from appellant-plaintiff's Amended Unified Complaint under Rule 12(f), Fed.R.Civ.P.

The second order dismissed the complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. We affirm in part and reverse in part the order which strikes portions of the complaint. We reverse the order of dismissal.

* Of the Southern District of New York, sitting by Designation.

Appellant, Gerald Lipsky, is the executor under the will of Walden Robert Cassotto—also known as Bobby Darin of singing fame ("Darin"). Defendants are a number of corporate entities all of which, according to Darin, have either the stock or the underlying assets of T. M. Music, Inc. ("T.M."). Darin was once the sole stockholder of T. M. In 1968, Darin entered into an agreement under which he exchanged all of this stock for the stock of one of the defendants. He now seeks rescission of this agreement, alleging a material breach of the contract. He has joined as defendants those companies which allegedly have some part of the T. M. stock or assets.

## I. The Facts

The important facts are not in dispute. In August of 1968 Darin was a well known actor, singer, and composer of popular songs. He was also the sole stockholder of T. M., a New York corporation which held title to various of his musical copyrights, publishing and recording rights in songs which were composed by Darin and other artists. On August 20, 1968, Darin entered into a contract with Commonwealth United Corporation ("CUC") and Commonwealth United Music, Inc. ("CUM")[1] under which he agreed to transfer to them all of his TM stock in return for CUC common stock worth $1.3 million. Both CUM and CUC are Delaware corporations. As part of their obligations under the contract, CUC agreed to file a Registration Statement for Darin's CUC securities at its own expense and to use its best efforts to cause the Registration Statement to become effective. The contract is a lengthy one with many provisions, but the dispute centers around that provision which deals with the

registration of Darin's stock (this paragraph is quoted in the margin).[2] The transaction was closed on September 13, 1968, and at that time, CUC stock was being traded on the American Stock Exchange for $18 per share.

On November 27, 1968, CUC did file a registration statement with respect to Darin's stock, which was later amended on April 29, 1969. On July 22, 1969, trading in the CUC stock was halted on the American Stock Exchange at CUC's request, and Over the Counter trading was suspended on August 1, 1969. On December 23, 1969, OTC trading was resumed and the stock was then priced at $.50 bid and $.75 asked.

At this point (and up to the time of this writing) Darin's stock had not been registered with the Securities and Exchange Commission ("SEC"). On April 7, 1970, Darin demanded that the contract be rescinded and that CUC and CUM return his TM stock. They refused. Darin commenced suit in United States Court, Central District of California, on August 27, 1970. On November 19, 1970, CUM sold the underlying TM assets, which it held, to the remaining defendants in the case: The Hudson Bay Music Company (formerly known as Alley-Street Music Venture), Alley Music Corporation, and Street Songs, Inc. They will be collectively referred to as "the Hudson defendants".

## The Proceedings Below

Although originally filed in California, this case was transferred to the Southern District of New York by order of the Judicial Panel on Multidistrict Litigation (dated October 28, 1970) and a stipulation of the parties (dated November 9, 1972). The rea-

---

1. According to Darin's complaint (Joint Appendix at 162 [hereinafter App.     ]), the entire outstanding stock of CUM is either owned or controlled by CUC.

2. Contract ¶ 14 (App. 58, relevant portion only): "During 1968, CUC shall, at its own expense, take all necessary action to file and thereafter use its best efforts to cause to become effective a Registration Statement under the Securities Act of 1933, as amended, with respect to the shares of CUC Stock issued and

delivered to the Stockholder [Darin] on the Closing. CUC shall, at its own expense, deliver to the Stockholder from time to time, as requested by the Stockholder such number of copies of the prospectus forming a part of such Registration Statement (and, in the event of any amendment of or supplement to such prospectus, such amended or supplemented prospectus) as the Stockholder shall reasonably request.  . . . "

son for this transfer was that in 1970, there were already 16 class and derivative suits pending against CUC and Seeburg Corporation (its wholly owned subsidiary) in the Southern District of New York. The Darin suit, and one other, were sent along as "tag along" cases for the convenience of the parties and the court. All of these suits which constituted the Seeburg-Commonwealth Multidistrict Litigation were tried before Judge McFadden, of the Northern District of Alabama, sitting by designation. The sixteen other suits, but not the instant case, were subsequently consolidated into two class actions which have already been settled. Darin's litigation has not been incorporated into either of the class actions. Aside from being a part of the Multidistrict Litigation, it has no relationship to these other cases.

In November of 1973, the District Court granted Darin's motion to amend and supplement his complaint and to add the Hudson defendants as additional parties. The Court also denied defendants' motion to dismiss at that time. A Unified Complaint was filed, and after Darin's death on December 20, 1973, an Amended Unified Complaint, substituting Darin's executor as plaintiff, was filed.

### The District Court's Order of July 11, 1975

On August 28, 1974, all of defendants moved under Rule 12(f), Fed.R.Civ.P., to strike certain portions of the Amended Unified Complaint. In four paragraphs of his complaint, Darin had alleged that the SEC had objected to a registration statement, two amendments to the registration statement and a proxy statement filed by CUC on the grounds that they contained material omissions, misleading statements, etc.[3] Defendants also objected to a copy of the SEC's civil complaint against CUC which was attached to the new complaint as an Appendix. These submissions and the SEC complaint did *not* relate to the submissions required to register Darin's particular shares. Darin claimed they were basically duplicates of the Darin statements and were probative on the question whether CUC used its best efforts to register the Darin stock.

A hearing was held on March 31, 1974 to discuss the motion and hear arguments. The motion to strike was granted in full. On July 11, 1975, the court ordered Darin to file a Second Amended Unified Complaint in the precise form as the first, except with the SEC allegations omitted. The result was that Darin was not permitted to allege that the filings and amendments to registration statements relating to his stock were defective. The order also noted that Darin had limited his suit to the single cause of action for rescission.[4] Pursuant to an agreement of the parties, a schedule was adopted for the determination of the various issues and for the determination of defendants' affirmative defenses under Rule 12(b)(6). The order provided that if the motion be granted, then the case would be dismissed with prejudice; otherwise, the remaining defendants would be required to answer the complaint and plead their affirmative defenses of laches and estoppel. At this point, discovery would be limited to that bearing on these defenses. A trial limited to these issues would then be held. If Darin survived this stage, then a trial

---

3. The following excerpt from the complaint (¶ 14) exemplifies the language to which the defendants objected. The portion excised by the district court is in brackets.

"On June 27, 1969, CUC filed with the Commission Amendment No. 2 to its November 27, 1968 Registration Statement. [Said Amendment was subject to objection by the Commission on grounds noted in its aforesaid complaint with respect to the proxy statement mailed by CUC on June 24, 1969 to its stockholders in that said Amendment, inter alia, omitted to state material facts and failed to disclose fully and accurately material facts as specified in paragraphs 11(a)–(d) of Exhibit C.]" (App. 78)

4. More precisely, Darin asks that the contract be rescinded and the TM stock and assets be returned to him, but if it is impossible to return the assets, then he asks for their value of $2 million. In addition, Darin seeks an injunction prohibiting the defendants from further encumbering the TM assets, an accounting to determine the profits derived from the TM assets, and costs and attorneys' fees.

would be held on the merits of his contract action. This July order also stayed all discovery, including interrogatories and requests for admissions submitted by Darin, until further order of the District Court.

### The District Court's Order of February 17, 1976

By notices dated August 26, 1975, defendants moved to dismiss the Second Amended Unified Complaint, averring it failed to state a claim under Rule 12(b)(6). Oral argument on this motion was heard at a pretrial conference October 15, 1975. The motion was granted February 17, 1976.

The order was without an opinion. It contained a number of conclusions: 1) as a matter of law, the "best efforts" clause requiring CUC to register Darin stock was not a "material" element of the contract and rescission was, therefore, not an appropriate remedy; 2) no breach by CUM, the recipient of the TM stock, is alleged in the complaint and CUM cannot be required to return the stock merely because CUC may have breached the "best efforts" clause; 3) although Darin is conceivably entitled to a return of his stock, no facts are alleged which show that he may be entitled to a return of the underlying assets; 4) rescission is not an appropriate remedy because a return to the status quo existing at the time the contract was signed would be impossible; 5) the complaint was fatally deficient because it failed to allege that CUC's alleged breach caused Darin any injury; and 6) the complaint fails to state a cause of action against the Hudson defendants.

The order concluded by dismissing the complaint with prejudice. It also ordered the delivery of 10,000 shares of CUC stock to Darin.[5]

Darin appeals from both the July 11, 1975 and February 17, 1976 orders. We shall formulate the precise issues in the course of the following discussion and shall group them around the order striking certain portions of the First Amended Unified Complaint, the order denying the remedy of rescission, and the order which denied relief as to CUM and the Hudson defendants.

### II. The Order to Strike Portions of the Complaint.

The court below struck two general portions of Darin's complaint. The first was a series of references to SEC objections to various CUC registration and proxy statements. The second was an SEC complaint against CUC, filed in the United States District Court, District of Columbia, alleging various violations of the securities laws.

Rule 12(f), Fed.R.Civ.P.,[6] permits the court to strike certain objectionable matter in the pleadings at a party's request. In his order of July 11, 1975, Judge McFadden granted in full defendants' motions to strike, but he did not write an opinion or explain the reasons why he found the matter objectionable. CUC claimed, in its moving papers, that the matter was "impertinent and immaterial". Only an examination of the parties' briefs provides an insight into the precise nature of defendants' contentions.

In their brief, CUC and CUM[7] cite numerous cases for the proposition that the consent judgment, which finally disposed of the SEC complaint referred to in Darin's complaint, would be inadmissible as evidence at a subsequent trial on the merits.

---

5. Judge McFadden had earlier approved a stipulation of settlement in one of the Commonwealth-Seeburg class actions (*Land v. CUC*) which reserved 10,000 shares of CUC stock for Darin in the event that he became a party to the *Land* suit. Judge McFadden later ordered that this stock be reserved for Darin in any case. It is not clear why the stock was reserved at all and how the 10,000 figure was arrived at.

6. *Motion to Strike.* Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

7. CUC and CUM filed a joint brief, which will hereinafter be referred to as CUC's brief.

Defendants argue that since plaintiffs can derive no evidentiary benefit from the consent judgment, itself, *a fortiori,* they cannot receive any succor from the complaint in that action. Thus, Darin's references to this complaint are entirely immaterial.

Plaintiff does not dispute that the consent judgment, itself, or the SEC complaint is inadmissible. Rather, he maintains that the SEC position towards CUC's registration and proxy statements is quite relevant to the question whether CUC used its best efforts to register the Darin stock.

■ In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. *Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241 (S.D.N.Y.1969), *aff'd,* 422 F.2d 342 (2d Cir. 1970); *Fleischer v. A. A. P., Inc.,* 180 F.Supp. 717 (S.D.N.Y.1959); *Wimberly v. Clark Controller Co.,* 364 F.2d 225 (6th Cir. 1966); *Parks-Cramer Co. v. Mathews Cotton Mills,* 36 F.Supp. 236 (W.D. S.C.1940); *see generally,* 2A *Moore's Federal Practice* ¶ 12–21[1] (2d ed. 1975). The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing. *Nagler v. Admiral Corp.,* 248 F.2d 319, 325 (2d Cir. 1957); *Atlantic City Electric Co. v. General Electric Co.,* 207 F.Supp. 620, 623 (S.D.N.Y. 1962).

■ Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone. *Atlantic City, supra* at 627; *Federated Dept. Stores, Inc. v. Grinnell Corp.,* 287 F.Supp. 744, 747 (S.D.N.Y.1968); *A. B. T. Sightseeing Tours v. Gray Line,* 242 F.Supp. 365, 369 (S.D.N.Y.1965).

■ We state these principles only to convey the care with which we affirm the district court's order. Although it appears to us that the opinion of the SEC may well be relevant to the question whether CUC used its best efforts, we hold that neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case.

■ This is a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. Consequently, it can not be used as evidence in subsequent litigation between that corporation and another party. Fed.Rules Evid., Rule 410, 28 U.S.C.A., prohibits a plea of nolo contendere from being later used against the party who so pleaded. Although CUC did not, technically, plead nolo contendere to the SEC's complaint, nolo pleas have been equated with "consent decrees" for purposes of the proviso to § 5(a) of the Clayton Act.[8] *City of Burbank v. General Electric Co.,* 329 F.2d 825, 834 (9th Cir. 1964); *Atlantic City Elec. Co. v. General Electric Co.,* 207 F.Supp. 620, 628 (S.D.N. Y.1962); *State of Minnesota v. United States Steel Corp.,* 44 F.R.D. 559, 583 (D.Minn.1968). The reason for this equivalence is that both consent decrees and pleas of nolo contendere are not true adjudica-

---

8. 15 U.S.C.A. § 16(a). In essence, this section gives collateral estoppel benefits both to the Federal Government and to parties other than the Federal Government where final judgments and decrees have been rendered in antitrust suits commenced by the Federal Government. A proviso, however, excludes consent judg-

ments from the Act's liberalizing provisions. Prior to the passage of the Clayton Act, consent judgments as well as final judgments, decrees, and guilty pleas did *not* have this collateral estoppel effect as to different parties. *Buckeye Powder Co. v. E. I. DuPont,* 248 U.S. 55, 39 S.Ct. 38, 63 L.Ed. 123 (1918).

tions of the underlying issues; a prior judgment can only be introduced in a later trial for collateral estoppel purposes if the issues sought to be precluded were actually adjudicated in the prior trial. *Buckeye Powder Co. v. E. I. DuPont,* 248 U.S. 55, 63, 39 S.Ct. 38, 63 L.Ed. 123 (1918); *International Shoe Mach. Corp. v. United Shoe Machinery Corp.,* 315 F.2d 449 (1st Cir. 1963); *Bronxville Palmer Ltd. v. State of New York,* 18 N.Y.2d 560, 277 N.Y.S.2d 402, 223 N.E.2d 887 (1966). The consent decree entered into by the SEC and CUC was the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits by the district court.

Since it is clear that the SEC–CUC consent judgment, itself, can have no possible bearing on the Darin action, the SEC complaint which preceded the consent judgment is also immaterial, for the purposes of Rule 12(f).

We agree that the SEC's opinion on the sufficiency of the various statements may be relevant and may be admissible.[9] But we do not agree that it necessarily follows that its complaint is appropriately within the pleadings.

Quite frankly, we do not understand how Darin is harmed by the elimination of the SEC references. If the trial judge finds that testimony or documents from the SEC are admissible on the "best efforts" question, surely Darin need not allude to this evidence in his complaint as a condition for its admission.

■ The order of the district court is modified to the extent that plaintiff be permitted to amend his complaint to partic- ularize the alleged inadequacies of the Darin statements, omitting any references to the complaint of the SEC against CUC. Rule 12(f) should be construed strictly against striking portions of the pleadings on the grounds of immateriality, and if the motion is granted at all, the complaint should be pruned with care. *Nagler v. Admiral Corp.,* 248 F.2d 319, 322 (2d Cir. 1957); *Atlantic City Electric Co., supra.*

III. *The Availability of the Relief of Rescission.*

The February 13, 1976 order of the District Court dismissed Darin's complaint under Rule 12(b)(6) because, among other reasons, the complaint failed to state a valid basis for the remedy of rescission which Darin requested.[10] We find that this determination was premature and that the court below should receive more evidence on the issues of the materiality of the best efforts clause and whether the status quo can be restored between the parties.

■ The standard which governs the dismissal of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for insufficiency unless it appears to be a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim [emphasis omitted]," 2A *Moore's Federal Practice* ¶ 12.08 at 2271 (2d ed. 1975); *Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284 (2d Cir. 1971) (Civil Rights action); *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968) (Civil Rights action); *Kurzweg v. Hotel St. Regis Corp.,* 309 F.2d 746 (2d Cir. 1962). More on point, the Supreme Court has recently held that "[w]hen a fed-

---

**9.** We do not decide this question, but one can speculate that since the business of registering securities is a fairly complex and esoteric one, the opinion of the SEC may be relevant as to what is a proper registration or proxy statement and what sort of submission can be regarded as either a good faith effort or attempted fraud. We find no merit in the argument that Darin's SEC allegation is faulty since it refers not to the Darin filing itself but to a different, though identical one. CUC was registering different blocks of its same common stock and the district court could find that CUC's actions as to one block shed light on their intentions as to another block of stock.

**10.** Darin's original complaint, filed in the Central District of California, alleged three additional bases of relief; damages for fraud under Section 27 of the Securities Exchange Act of 1934; damages for common law fraud; and damages for breach of contract. The Amended Unified Complaint, dated August 5, 1974, omitted these three causes of action, retaining only the prayer for rescission. *See* July 11 order (App. 155).

eral court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Since Judge McFadden decided two crucial issues—that the allegedly breached "best efforts" clause of the contract was not a "material" clause and that the status quo could not be restored among the parties— on the complaint (and appended contract) without the aid of affidavits or other evidence, the question, under *Scheuer,* is whether the Court should have postponed its decision until the evidence was in.

█ Although the standards for dismissing the complaint are federal standards, the federal district court judge must stand in the shoes of a state court judge when ruling on these contract issues in a diversity case such as this. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Kurzweg v. Hotel St. Regis Corp.,* 309 F.2d 746 (2d Cir. 1962). We thus turn to New York law for the standards which govern the remedy of rescission.[11]

█ In addition to the traditional damage remedy for breach of contract, New York will allow a party to rescind an executed contract for the sale of stock, but only if special conditions are met. *Lauer v. Raymond,* 190 App.Div. 319, 180 N.Y.S. 31 (1st Dept.1920). The particular conditions on which Darin's rescission quest failed were whether the clause allegedly breached

by CUC was a "material" part of the contract, and whether the status quo existing at the time the contract was signed could be restored if rescission were granted.

█ Rescission is a sparsely granted remedy and the party seeking rescission must show that his opponent breached a "material" aspect of the contract. *Fink v. Friedman,* 78 Misc.2d 429, 358 N.Y.S.2d 250 (Sup.Ct.1974); *Strand Bldg. Corp. v. Russell and Saxe, Inc.,* 36 Misc.2d 339, 232 N.Y.S.2d 384 (Sup.Ct.1962), aff'd 19 A.D.2d 592, 240 N.Y.S.2d 948 (1963). A "material" breach has been defined as one which would justify the other party to suspend his own performance, 12 *Williston on Contracts,* § 1469 at 186 (3rd ed. 1970), or a breach which is so substantial as to defeat the purpose of the entire transaction. *Fink, supra.* The question may be posed: Would the innocent party have agreed to enter the contract without the inclusion of the disputed clause?

Darin claims that CUC breached its promise to use its "best efforts" to register Darin's stock—which Darin had received in return for all of his TM stock. The district court found that, based on the complaint and appended contract itself, the clause was not "material".[12]

█ Older New York cases have distinguished between the legal and equitable remedies of rescission. *Seneca Wire and Manuf. Co. v. Leach,* 247 N.Y. 1, 159 N.E. 700 (1928); *E.T.C. Corp. v. Title Guarantee and Trust Co.,* 271 N.Y. 124, 2 N.E.2d 284 (1936). Although it is not clear whether the distinction persists, Darin's suit is an equitable one since he seeks a court supervised exchange of the TM and CUC stock and

11. The precise issue is whether, under New York law, a judge could have decided on the basis of the contract alone that a certain clause was "material" without receiving evidence on the question of materiality.

The parties have not briefed nor has the District Court discussed the lurking choice of law problem in this litigation. In interpreting contracts, the New York courts have applied the law of the jurisdiction having the greatest interest in the litigation—or the "center of gravity" theory. *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1953); *J. Zeevi and Sons, Ltd.,*

*v. Grindlays,* 37 N.Y.2d 220, 371 N.Y.S.2d 892, 333 N.E.2d 168 (1975), cert. den., 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975). The record is mute on the subject; the parties have cited New York case law, so, for lack of a better alternative, we use New York law.

12. The motion was apparently discussed at a pretrial conference. We have no transcript of this conference, and our objections to the way this motion was decided are discussed *infra,* p. 897.

assets.[13] As such, the question of "materiality" is clearly for the court. *Fink, supra,* 78 Misc.2d at 435, 358 N.Y.S.2d 250; *Rudman v. Cowles Comm., Inc.,* 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972); *Stamps v. Mills Music, Inc.,* 196 Misc. 480, 92 N.Y.S.2d 79 (Sup.Ct.1949); *cf., Borax v. Borax,* 3 A.D.2d 404, 161 N.Y.S.2d 232 (1957), *aff'd,* 4 N.Y.2d 113, 172 N.Y.S.2d 805, 149 N.E.2d 326 (1958). The remaining question is whether the District Judge could properly have decided this question based on the limited information before him. We think not.

The parties have cited numerous cases in support of, or in opposition to, the materiality of the "best efforts" clause. Most of these cases are inapposite for two reasons: first, many deal with stock rescissions based on violations of the federal securities laws; the instant case is a breach of contract case and is governed by state not federal law. Second, the cases tend to deal with the materiality of a particular clause after evidence on the issue has been received and weighed; these cases beg the question, since we are concerned about whether the district court decided the issue prematurely.

■ The essential tool in properly interpreting a contract is to first ascertain the intent of the parties. *Rottkamp v. Eger,* 74 Misc.2d 858, 346 N.Y.S.2d 120 (Sup.Ct.1973); *Strand Bldg. Corp. v. Russell and Saxe, Inc.,* 36 Misc.2d 339, 232 N.Y.S.2d 384 (Sup. Ct.1962), *aff'd,* 19 A.D.2d 592, 240 N.Y.S.2d 948 (1963).

■ Unless the intent is unambiguous from the four corners of the documents, extrinsic evidence of the parties' intent should be received. *Rottkamp, supra,* 74 Misc.2d at 125, 346 N.Y.S.2d 120; *cf. Heller and Henretig, Inc. v. 3620–168th St., Inc.,* 302 N.Y. 326, 98 N.E.2d 458 (1951).

We turn now to the document itself. CUC argues that the clause could not have been one of the contract's keystones. Its most telling point is that since the registration of the stock was not a condition precedent[14] to the exchange of the securities, and since "best efforts" necessarily means that the stock might never have been registered, the fact that CUC was required to endeavor to register the stock could not have been a central obligation. CUC also asserts that a "liquidated damage clause"— not the remedy of rescission—governs a breach of the best efforts provision.[15] We think, however, that this argument misses the point. "Best efforts" registration clauses are common and are significant. Due to the nature of the securities business and the vagaries of the SEC, registration can never be *guaranteed,* but in the usual case a "best efforts" clause is as close to a guarantee of registration as any careful seller is willing to give. In this case, it is not difficult to imagine why someone like Darin, whose earnings as an entertainer might fluctuate wildly or suddenly disappear, might have wanted the added flexibility that registration would provide.

However, it may be inferred from the contract that Darin wanted his stock registered. The Registration Statement was "to be filed by CUC in 1968."[16] Darin was to be compensated by additional stock if the

---

**13.** Rescission is a legal remedy when a party first returns or tenders a return of what he received and then sues to recover what is now "rightfully his."

**14.** Sections 8 and 9 set out the conditions precedent for the exchange of stock. (App. 43–47).

**15.** Section 10.3 of the contract reads in relevant part:
"If the Registration Statement to be filed by CUC in 1968 . . . shall not become effective on or before the expiration of 60 days from the Closing Date, and the Effective Date Market Value is less than the Market Value, CUM shall deliver to the Stockholder on the effective date such additional number of shares [which would be shares enough to compensate for any drop in the price of the CUM stock after that 60 day period.]" (App. 48)
This is not a liquidated damages clause since it has nothing to do with a party's breach; it merely compensates Darin for any loss due to registration delay. Furthermore, CUC's 'liquidated damage' interpretation is belied by § 13 which provides remedies for any breach.

**16.** Contract Section 10.3, ftn. 16, *supra.*

registration was delayed and the price of CUC fell—implying that Darin was prepared to possibly sell the stock once it was registered.[17] Even though registration was not guaranteed, Darin may have been willing to take this risk but *only* on the condition that CUC try its best to accomplish this objective. In other words, without CUC's "best efforts" promise, Darin may not have even considered exchanging his TM stock. CUC notes that if this is true, then the contract itself could have provided for rescission in the event of failure to register the stock. But CUC may have opposed the idea or Darin may have accepted the risk involved in order to allow the contract to proceed, or Darin may not have thought of this rescission alternative.

■ Of course, this court can speculate.[18] All we need consider, however, is whether or not the question of materiality can be decided on the complaint alone. We hold that it cannot, that the intent of the parties was too ambiguous to be totally gleaned from only the contract, and that the District Court should have received evidence on the question.[19] *See Perma Research and Development Co. v. Singer Co.*, 308 F.Supp. 743 (S.D.N.Y.1970) (summary judgment too frail a vehicle by which to dispose of a complex case) and two cases which denied motions to dismiss a complaint and a counterclaim on the grounds that clauses in the contracts were matters for trial. *Strand Bldg. Corp. v. Russell and Saxe, Inc.*, 36 Misc.2d 339, 232 N.Y.S.2d 384 (Sup.Ct.1962), *aff'd*, 19 A.D.2d 592, 240 N.Y.

S.2d 948 (1963). *Stamps v. Mills Music, Inc.*, 196 Misc. 480, 92 N.Y.S.2d 79 (Sup.Ct. 1949).

■ A second ground on which the District Judge based his decision to dismiss the complaint was that it would be impossible to restore the parties to the status quo existing prior to the stock exchange in 1968. *Rudman v. Cowles Comm. Inc.*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972). Although this is a question of fact, the only basis on which Judge McFadden could have decided the question was on the pleadings and unrecorded pre-trial conferences.

While Rule 12(c) Fed.R.Civ.P. allows a district judge to treat a motion to dismiss a complaint as a motion for summary judgment, Rule 56(c) provides that the judgment may be rendered if, based on pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, there are no material disputed facts at issue.

There is no indication that affidavits were solicited from the parties, nor is there any indication on the record or the briefs that the motion to dismiss would consider any factual disputes. What we suspect occurred is that Judge McFadden, who presided over seventeen other suits against CUC and Seeburg in addition to the Darin action, based his "status quo" ruling on his own personal knowledge of this series of cases. If true, this was, of course, not in accord with Rule 12(c) or ordinary considerations of fairness with respect to Darin.

---

**17.** This stock did not have to be registered before it could be sold, although this would have been the easiest method to facilitate a sale. Under § 6 of the contract, Darin covenants not to sell the CUC stock unless 1) it was either registered, or 2) Darin obtained an opinion letter from counsel that a sale would be legal under the Securities Act of 1933, or 3) Darin obtained a "no action letter" from the SEC.

**18.** We are not persuaded that the breach *was* material. We express no opinion on the merits of the issue save to note that the cases on which Darin relies are distinguishable. *Seneca Wire and Mfg. Co. v. Leach*, 247 N.Y. 1, 159 N.E. 700 (1928) (fraudulent misrepresentation at the time the contract was signed); *Lauer v.*

*Raymond*, 190 App.Div. 319, 180 N.Y.S. 31 (1st Dept.1920) (rescission of stock sale granted on breach of condition that certain persons, obnoxious to buyer, would not enter the corporation).

**19.** We note that Darin has died. This places an extra burden on the discovery process since the plaintiff may now have to obtain this same evidence from the defendant. The order of Judge McFadden on July 11, 1975 suspended any further discovery without the Court's permission, and that order was inappropriate considering that the motion to dismiss was imminent and that further discovery may have unearthed certain facts which could have saved Darin's complaint from dismissal—especially as to the Hudson defendants.

We hold that whether the status quo could be achieved is a question of fact and could not be decided solely on the pleadings. The question is also one of law since it appears that the status quo requirement as to the defaulting party relaxes as the breach, itself, becomes more serious. *Jones Chemicals, Inc. v. City of Binghamton*, 26 A.D.2d 710, 271 N.Y.S.2d 507 (1966), *aff'd*, 20 N.Y.2d 808, 284 N.Y.S.2d 702, 231 N.E.2d 288 (1967); *Duggan v. Platz*, 238 App.Div. 197, 264 N.Y.S. 403 (1933), *modified*, 263 N.Y. 505, 264 N.Y.S. 403, 189 N.E. 566 (1933). Quite clearly, these questions can only be answered after the facts have been flushed out.

■ A third basis on which the court below decided that rescission is not a proper remedy is that, although Darin may have a claim to the TM stock which he exchanged, he has no claim to the underlying assets which have since been sold to third parties. Since the District Judge sits as an equity judge in this rescission action, it is for the court to fashion the proper remedy *after* all the relevant facts have been found.

■ The District Judge rested his decision to deny rescission on a final ground: that Darin failed to plead that he was damaged as a result of the action of CUC. However, it appears that under New York law, damage need not be specifically pleaded in an action to rescind a contract. *Lauer v. Raymond*, 190 App.Div. 319, 180 N.Y.S. 31, 38 (1st Dept. 1920); *Scheidl v. Universal Aviation Equipment*, 159 N.Y.S.2d 278, 281 (Sup.Ct.1957).

CUC further suggested that Darin's rescission claim was barred for another reason—laches. However, in his opinion of July 11, 1975 Judge McFadden ordered that the question of laches was to be tried if and only if Darin survived the motion to dismiss. The question of laches is thus not properly before us at this time.

IV. *The Availability of Relief Against CUM and the Hudson Bay Defendants.*

■ In his final order of February 13, 1976, dismissing Darin's complaint, Judge

McFadden held that the complaint did not state a cause of action for rescission. But in addition, he held that even if it did state such a cause of action, rescission was not available against either CUM or the Hudson defendants. We hold that both of these conclusions were in error.

The claim was dismissed against CUM because the complaint "shows no breach by defendant Commonwealth United Music, Inc. ("CUM") of said Agreement (App. 199)." This contention may be disposed of summarily. If Darin can prove that CUM is, indeed, a wholly-owned subsidiary of CUC—as claimed in Darin's complaint—then New York courts might pierce the corporate veil under at least two possible theories: CUM may be deemed an "agent" of CUC and thus liable to return the stock and assets to Darin solely because of a breach of the contract by CUC, *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (N.Y.1966); *Custer Builders, Inc. v. Quaker Heritage, Inc.*, 41 A.D.2d 448, 344 N.Y.S.2d 606 (1973); or the corporate existence of CUM may be ignored entirely, *Cameron Equipment Corp. v. People*, 31 A.D.2d 299, 297 N.Y.S.2d 326 (1969), *aff'd*, 27 N.Y.2d 634, 313 N.Y.S.2d 763, 261 N.E.2d 668 (1970); *Kaminsky v. Kahn*, 27 A.D.2d 248, 277 N.Y.S.2d 968 (1967), *rev'd on other grounds*, 20 N.Y.2d 573, 285 N.Y.S.2d 833, 232 N.E.2d 837 (1967). In either case, it would not be necessary to prove an independent breach by CUM.

■ The District Court also dismissed the claims against the Hudson defendants on the ground, presumably, that these defendants are good faith purchasers for value and could not be required to return the TM assets which they had bought from CUM. We do not agree that dismissal was proper at this time since the bona fides of these defendants is a question of fact. Our decision might be different if this were an indiscriminate "round-up" by Darin of all the present owners of TM assets or stock in order to force their return of the property. But Darin alleges facts which, if true, indicate that the Hudson defendants may not

be bona fide purchasers. He alleges that these defendants knew that CUM was being sued by Darin at the time that they bought the TM assets, and that the TM stock was itself the subject matter of this suit.

We express no opinion on whether mere notice of a lawsuit is enough to dissipate the "bona fide purchaser" status of the Hudson defendants. Rather, we hold that Darin has alleged sufficient facts to entitle him to complete discovery before his complaint is subject to dismissal for failure to state a claim as to these defendants.[20]

The Hudson defendants further argue that, assuming they are not bona fide purchasers and that therefore a "constructive trust" does arise in favor of Darin, this trust encompasses only the TM stock and not the assets.

This determination is to be made at trial by the district court judge who will be forging the equitable relief in this suit and not on a motion to dismiss the complaint.[21]

The order striking portions of the complaint is modified as set forth herein. The order granting defendants' motion to dismiss is reversed.

20. Judge McFadden stayed all discovery by both Darin and the defendants in his July 11 order.

21. *See* discussion, *supra*, at 895.